[Civ. No. 62903. Second Dist., Div. One. Mar. 10, 1982.]

DOMINGA ORTIZ, Plaintiff and Respondent, v.
MARION WOODS, as Director, etc., Defendant and Appellant.

J. S. HARLEY, Plaintiff and Respondent, v.
MARION WOODS, as Director, etc., Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Elizabeth Hong, Deputy Attorneys General, for Defendant and Appellant.

Toby J. Rothschild, Neil Jayson Roberts, Marsha Lynn Jones, Philip L. Goar, Paul Ashby, John McDermott and Marilyn Katz for Plaintiffs and Respondents.

OPINION

**DALSIMER, J.**—Defendant appeals from an order granting a preliminary injunction in this consolidated matter. We affirm.

### PROCEDURAL HISTORY

Plaintiff Harley filed a class action seeking to invalidate Manual of Policies and Procedures: Operations, section 22-022.51 (hereinafter 22-022.51), which was promulgated by defendant as Director of the State Department of Social Services. Shortly thereafter, plaintiff Ortiz filed her complaint, making essentially the same claims as Harley. On October 22, 1980, the trial court certified the class pursuant to the stipulation of the parties and ruled that Harley's complaint adequately described the questions of law and fact common to the class. The class was certified as consisting of "all public assistance recipients who: [¶] (a) receive written notice from the State of a discontinuance or reduction in aid; [¶] (b) file a hearing request between the date of the notice of discontinuance or reduction and the next regular date of aid payment when the notice will be effective; and [¶] (c) are denied full public assistance pending a final decision on the hearing pursuant to Operations Manual section 22-022.51." Thereafter, based upon the stipulation of the parties, the court ordered that the cases be consolidated. Pursuant to stipulation and order, plaintiff Ortiz became an additional class representative. On January 26, 1981, the trial court issued the injunction which is the subject of this appeal.

### FACTS

Mr. Harley, who resided with his wife and three children, received $556 monthly aid for dependent children (AFDC) benefits according to an established eligibility. On May 6, 1980, defendant's local agent, the County of Los Angeles, mailed a notice of proposed action to Mr. Harley, advising him that his AFDC benefits would be reduced beginning June 1, 1980, because of an alleged failure to return a form requested by the agency. The notice was ambiguous in that it proposed to reduce the $556 monthly allowance to either $146 or $410 per month. As the

usual expenses of providing the necessities for this family were approximately $560 per month, the reduction to either sum would deprive the family of an ability to survive. The family had no resources, and the only thing of value that could be sold was a 1967 automobile which was worth no more than $150. Mr. Harley had not returned the form which was mentioned in the notice because he had never received it.

Because of the threat of vandalism and theft in the neighborhood where Mr. Harley lived, he had rented a post office box to which mail was delivered. Mr. Harley was unable to go to the post office every day, but went as often as he could. On May 16, 1980, 10 days after the notice was mailed, he found the notice of proposed action and prepared a request for an administrative hearing. He was unable to mail that request until May 17, 1980, which was one day more than the ten days allowed pursuant to 22-022.51. Because of this tardiness, the defendant reduced the family's AFDC payment June 1, 1980, without providing a hearing prior thereto.

Mrs. Ortiz lived in Los Angeles County with her grandchild and four children, one of whom was pregnant. When Mrs. Ortiz was laid off after working 14 years, the AFDC benefits of $686 per month that she received were the sole source of income for her family. Mrs. Ortiz received both federal and state income tax refunds in April 1980, which she duly reported to the County of Los Angeles on her monthly income report for May 1980. Subsequently she received a notice dated May 8, 1980, that her family's grant for June 1980 was being eliminated. The notice was printed in English, which Mrs. Ortiz did not understand. She did not contact her eligibility worker because her worker did not speak Spanish, although she had requested a Spanish-speaking worker many times. Eventually someone explained the notice to her and explained that she could request a hearing. On May 20, 1980, 12 days after the notice was mailed, she requested the hearing; prior to granting such a hearing, defendant withheld Mrs. Ortiz' monthly grant for June 1980 pursuant to 22-022.51. Because of the withholding of this payment, Mrs. Ortiz was without funds. She was able to borrow money for food, but could not pay her rent or her utilities.

## ISSUE

Does 22-022.51 unlawfully limit the circumstances under which a welfare recipient may continue to receive benefits pending an administrative appeal?

## DISCUSSION

In his reply brief, defendant has conceded that plaintiffs' proof of irreparable injury was irrebuttable and that the trial court's implied factual finding of irreparable harm was correct. All parties advise us that the posture of this case is such that we need not confine our review to the propriety of the trial court order but instead may dispose of the case on the merits. The parties support this proposition by reference to *North Coast Coalition* v. *Woods* (1980) 110 Cal.App.3d 800 [168 Cal. Rptr. 95]. After reviewing case law on appellate review of orders granting injunctions, that court stated, "The present case is 'clear,' and thus a determination on the merits is appropriate, because no fact questions are presented. The issue of the validity of the challenged regulations is solely one of law, and this court is in as good a position to resolve the issue now as the trial court would be after determination of this appeal." (*Id.*, at p. 805.)

We agree with the parties that this case should be resolved at this time. From the inception of Ortiz' and Harley's lawsuits, the challenge has been purely legal. The class consists exclusively of persons who file a hearing request after the 10-day period set forth in 22-022.51 and are denied a hearing prior to the intended action being taken. We therefore embark upon a review of the case on the merits, notwithstanding the lack of a final trial court order.

Title 45, Code of Federal Regulations, section 205.10 (1980) provides in part: "(a) ... [¶] (4) In cases of intended action to discontinue, terminate, suspend or reduce assistance ... [¶] (i) The State or local agency shall give timely and adequate notice, ... [¶] (A) 'Timely' means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective; ... [¶] (6) If the recipient requests a hearing within the timely notice period: [¶] (i) Assistance shall not be suspended, reduced, discontinued or terminated, (but is subject to recovery by the agency if its action is sustained), ...."

Section 22-022.51 in pertinent part provides: "... when the claimant files a request for a state hearing within ten days from the date that notice ... was mailed, aid shall be continued, until the hearing decision in the amount that the claimant would have been paid if the proposed action had not been taken."

The seminal case on the due process rights to which welfare recipients are entitled is *Goldberg v. Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]. It is generally recognized that 45 Code of Federal Regulations, section 205.10 was promulgated to ensure compliance with the interdiction of *Goldberg.* The court in *Goldberg* held that when welfare is discontinued, procedural due process requires a pretermination evidentiary hearing. (*Goldberg v. Kelly, supra*, 397 U.S. 254, 264 [25 L.Ed.2d 287, 296-297].) As the *Goldberg* court noted, termination of welfare affects the welfare recipient more profoundly than does the black listing of a government contractor, the discharge of a government employee, or the denial of a tax exemption to a taxpayer. (*Ibid.*) This is because the termination of aid pending resolution of the controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits.

The plaintiffs argue that the defendant's regulation 22-022.51 when viewed in light of the *Goldberg* holding violates 45 Code of Federal Regulations section 205.10 in that it sets an arbitrary time limit within which to appeal and to continue receiving benefits pending the resolution of the dispute. The core of the argument involves the determination of the meaning of "timely notice period" as used in federal regulation 205.10(a)(6). The parties agree that if the administrative appeal is filed within the "timely notice period," administrative action is stayed until the hearing. The plaintiffs contend that so long as the request for a hearing is made prior to the effective date of the administrative action, their eligibility must continue undisturbed pending a decision on the appeal. The defendant contends that if the request for the hearing is not made within 10 days after the date of mailing of notice, the contemplated action may be taken prior to resolution of the dispute.

We are not bereft of guidance in making our determination. In at least one other instance, the meaning of "timely notice period" has been judicially determined. In *Almeida v. Chang* (D. Hawaii 1977) 434 F.Supp. 1177 that precise question was before the United States District Court. After quoting 45 Code of Federal Regulations section 205.10(a)(4) (1976), the district court stated, "Using this definition of 'timely' as a guide, it seems clear that the 'timely notice period' must extend for at least 10 days and that these ten days must occur before the date the action becomes effective. That does not answer the question of whether or not the state can provide for a 'timely notice period' of only ten days, and arbitrarily pick any ten-day period without regard to when the termination becomes effective. In my opinion, the phrase

'timely notice period' should be interpreted to be a period of at least ten days which extends from the date of notice of termination to the date the action becomes effective." (*Id.*, at p. 1179.) Additionally, the federal court held that the obvious ambiguity in the definition of the word "timely" should be construed in favor of the welfare recipient. (*Id.*, at p. 1180.) The court stated, "If the federal government had wanted to allow ten-day periods to be set with reference to the date of notice only, it could easily have said so." (*Ibid.*)

Although defendant states that the court's decision in *Almeida* displayed serious defects in logic and reasoning, defendant offers no alternate explanation for the wording of the definition of "timely" as set forth in 45 Code of Federal Regulations section 205.10. The focal point of said regulation is ". . . the date upon which the action would become effective." Had the framers of the federal regulation desired that the definition of "timely notice period" be less than the time between the date of mailing the notice and the date of the contemplated action, they would have simply substituted the word "10-day" for the word "timely" in section 205.10(a)(6).

The major thrust of the opinion in *Goldberg* v. *Kelly, supra,* 397 U.S. 254, is that welfare recipients be afforded a reasonable opportunity for a hearing before their benefits are terminated. Defendant's interpretation of the federal regulation converts the notice period from "at least 10 days" to a maximum of 10 days. As the recipient has 90 days under defendant's regulations from the date of notice to make a request for a hearing (State Dept. of Social Services, Manual of Policies and Procedures: Operations, § 22-009), the limitation of 10 days within which he must make such a request to avoid termination or alteration of his benefits cannot be justified. This is particularly true where, as here, the department's regulations afford no relief to the recipient who has sufficient excuse for delay in filing the request. Whereas 22-022.51 provides for 10 days' notice from the date of mailing, the trend of public policy in California is to extend the time for giving notice. The Legislature, as recently as 1980, affirmed this policy by amending section 1005 of the Code of Civil Procedure to extend the time for written notice of motion by 5 days when the notice is mailed to an address within California, and in 1981 amended section 1005 to provide for 15 days' notice of motion rather than the former 10 days. It appears to this court that there can be no reason for the adoption of 22-022.51, except to reduce the number of instances where a hearing would be afforded to welfare

recipients prior to effecting the intended change. Further, it is doubtful whether requiring action by the recipient within 10 days of *mailing* rather than *receipt* of the notice is constitutional. (*Goldberg* v. *Kelly, supra*, 397 U.S. 254.)

It should be noted that if, after hearing, it is determined that the contemplated action is appropriate, the aid paid pending the hearing is recoverable by the state. (45 C.F.R. § 205.10(a)(6)(i) (1980).) Procedures for such recovery have been established. Such procedures include reducing current payments due the recipient and, where necessary, actions in court for restitution. (State Dept. of Social Services, Manual of Policies and Procedures: Operations, § 10-121.6.)

Defendant opines that the effect of a decision such as·that reached by the *Almeida* court could be circumvented by the mere expedient of withholding service of notice until 10 days prior to its effective date. If indeed defendant were premeditatedly to dispatch the notices in such a manner as to assure the minimum 10-day notice, its action would only lend credence to the assertion that the purpose of the rule is to circumvent the intent of the United States Supreme Court in *Goldberg* v. *Kelly* to insure a pretermination evidentiary hearing.

Defendant also makes the assertion that different counties might elect to send out notices of intended action at different periods of time prior to the effective date and, thus, that there would be a complete lack of uniformity throughout the state. Defendant states, "The impact would probably be as varied as there are numbers of counties in the state." This court finds that argument to be quite remarkable. Insofar as different practices in different counties are concerned, it is difficult for us to comprehend why defendant would permit such leeway on the part of its own agents (the counties) so as to provide 58 different rules within the state.

Any efforts made by the director to ensure that recipients of aid do not receive, *sans* entitlement, payments in any amount are laudable, and we do not mean to be critical thereof. The task of the director and of the courts is to balance the duty to withhold overpayments with the right of the recipients to due process.

We hold that 22-022.51 is invalid insofar as it requires that a request for a state hearing must occur at any time sooner than the effective

date of the contemplated action in order to ensure aid being paid pending the hearing. The order granting the preliminary injunction is affirmed.

Kakita, J.,* concurred.

**HANSON (Thaxton), Acting P. J.**—I concur. My concurrence is bottomed on the posture of this case as a "class action" as certified.[1]

However, I disagree with the statement in the lead opinion that "It appears to this court that there can be no reason for the adoption of [Manual of Policies and Procedures: Operations, section] 22-022.51, except to reduce the number of instances where a hearing would be afforded to welfare recipients prior to effecting the intended change." This paints a picture of a heartless Director of the State Department of Social Services and those who promulgated section 22-022.51 as totally lacking in compassion with the truly needy. To the contrary I view section 22-022.51 as a good faith effort by the State Department of Social Services, which is a fiduciary of public funds, to get a handle on the waste of public funds through fraud or overpayment to those not legally entitled to such benefits.

Moreover, although the procedures in place to recoup overpayments by reducing current payments due recipients or court action for restitution may mitigate some loss of public funds, it undoubtedly "makes work" for the department and will in all likelihood never result in total recovery. Accordingly, the Department of Social Services may wish to go back to the drawing board and streamline its procedures by revising its Manual of Policies and Procedures by possibly reducing the time periods between the time the information is received by the department which triggers "intended action to discontinue, terminate, suspend or reduce assistance," and the date of effective action and the hearing date

---

*Assigned by the Chairperson of the Judicial Council.

[1]Assuming, arguendo, in the instant case that such notice was "timely" given by mail as to the date of effective action, the fact that plaintiff Harley maintained a post office box (for whatever reason) and did not clear his post office box within the prescribed time would not preclude the department from taking the action intended on the action date.

Nor would such "timely" notice to plaintiff Ortiz preclude the department from taking the intended action because the notice was printed in English which she apparently could not read. English is the official language. She could have easily found someone to translate it for her.

(where applicable) but, of course, subject to the "timely" notice requirement.[2]

A petition for a rehearing was denied April 7, 1982, and on March 31, 1982, the judgment was modified to read as printed above.

---

[2]In my view the notice would be "timely" if, due to the vagaries of the postal service, it is mailed earlier than 20 days before the date of effective action in view of California Code of Civil Procedure section 1005, as amended.