[Civ. No. 47354. First Dist., Div. One. Nov. 2, 1981.]

MICHAEL BLACKBURN, Plaintiff and Appellant, v.
EDWIN S. SARSFIELD, as General Manager, etc., Defendant and
Respondent.

COUNSEL

Sterling L. Ross, Jr., for Plaintiff and Appellant.

George Agnost, City Attorney, and Marie Burke Lia, Deputy City Attorney, for Defendant and Respondent.

OPINION

**GRODIN, J.**—Michael Blackburn through his guardian Aurelia D. Watson appeals from a judgment denying a writ of mandate. The question presented is whether respondent, the General Manager of the San Francisco Department of Social Services, should be directed to pay retroactive aid to appellant pursuant to a fair hearing decision adopted by the Director of the state Department of Benefit Payments. The trial court, in denying appellant's petition for the peremptory writ, concluded that respondent was under no such obligation. We reverse for the reasons stated below.

### Facts

Michael Blackburn was born in 1958. For eight months during 1974 and 1975 he resided at the Western Institute for Human Resources, a

treatment center for emotionally disturbed children. The City and County of San Francisco, through its department of social services, paid for the cost of his placement there, using a combination of county general assistance funds and state funds from the aid to families with dependent children/boarding homes and institutions (state AFDC-BHI) program. It is undisputed that in addition to the funding provided for his placement at the Western Institute, Michael was also a recipient of supplemental security income (SSI) during 1974 and 1975.

On March 31, 1975, Michael's aunt Aurelia Watson removed him from the Western Institute and returned him to her home. The following year Michael attended the Louise M. Lombard School, a public school for the trainable mentally retarded; but it became increasingly apparent to the school staff that because of his acute emotional problems, he would be better served in a residential treatment facility offering constant supervision.

On June 2, 1976, John Steininger, a child welfare worker at the San Francisco Department of Social Services, wrote a letter to Dr. Charles Agler, Michael's treating physician. The letter provides in part: "I continue to feel strongly that Michael would greatly benefit from out of home placement for a variety of reasons.... [¶] I spoke to Mrs. Watson several days ago, and she appeared to be resistive to Michael's being placed.... I make mention of this because I feel you would be able to encourage Mrs. Watson to relinquish responsibility for Michael and have her help in initiating placement out of the home. Mrs. Watson has frequently stated she heavily relies on your recommendations." In mid-summer 1976 Mr. Steininger received a call from Harry Stratton, director of the Western Institute, who said that Dr. Agler and Mrs. Watson had brought Michael to the institute for a preplacement visit. Mr. Stratton inquired as to what financial arrangement the county would make. Mr. Steininger discussed the matter with his superiors. Following a placement committee evaluation, the county determined that funding would not be provided. Mr. Steininger explained in a declaration dated December 8, 1976, "Their concern was whether Michael was really eligible financially [and] they had serious questions whether Western Institute was an appropriate placement for Michael."

An administrative appeal followed, and a fair hearing decision was adopted by the Director of the California Department of Benefit Payments on May 26, 1977. The decision notes that according to regulations of the department, "a child for whom a placement plan has been

developed" and "who has reached his 18th birthday but is under 21 years of age meets the age requirement for AFDC eligibility if he is participating in either (1) a school or (2) a program of technical training designed to prepare participants for gainful employment." The decision reasons: "Inasmuch as a plan had originally been developed by the county for Michael's placement in the Western Institute and the county had continuously encouraged return to such plan until the time of application for restoration of aid, eligibility for the payment of AFDC is dependent upon [Michael's participation in a school or training program]. [¶] A preponderance of the evidence indicates that but for the county's refusal to provide financial assistance, Michael would be attending the Western Institute on a full-time basis. Such attendance would fulfill the [participation] requirement [contained in the regulations]." The decision concludes: "San Francisco is ordered to restore AFDC-BHI to the claimant to facilitate Michael's return to the Western Institute, effective the beginning date of aid had aid been approved *or* the date from which Michael *was* attending school full-time *whichever is later.*" (Italics added.)

The county refused to comply with the order and requested a rehearing on two grounds: that Michael was ineligible for AFDC-BHI because he was receiving SSI, and that the Department of Benefit Payments had no jurisdiction because Michael's placement at the Western Institute would have to be funded exclusively by the county. A rehearing was scheduled for August 17, 1977, but the county apparently was not notified. The Director of the Department of Benefit Payments ordered a further rehearing. Meanwhile, on December 13, 1977, Aurelia Watson as Michael's guardian ad litem caused to be filed in the superior court a petition for writ of mandate, to compel compliance with the administrative decision of May 26. An alternative writ issued and a hearing on the order to show cause was set for January 5, 1978, but that hearing was apparently continued.

A further rehearing in the administrative proceedings was held on January 17, 1978. The rehearing record was left open for a time, pending the outcome of the civil litigation. On April 17, 1978, while the civil matter was still pending, the administrative hearing officer submitted a proposed decision to the Director of the Department of Health. That decision,[1] adopted by operation of law (Welf. & Inst. Code, § 10959)

---

[1]The rehearing decision was not designated as a part of the record on appeal, and there is no showing that it was ever submitted to the trial court. A copy is appended to

on May 18, 1978, provides in part: "The uncontroverted evidence establishes that Michael Blackburn is in need of placement in a residential treatment facility .... It is the county's responsibility to involve Michael and those who have worked with him, in developing a plan that meets his needs. [¶] Michael was eligible to receive these services as an SSI/SSP recipient; he would also probably retain income eligibility as an AFDC-BHI recipient. [¶] The county was sufficiently familiar with Michael's case in the Spring of 1976 to know that Michael was about to become 18 years old, and no longer eligible for children's services.... Therefore, the county is still responsible to provide the needed placement services to Michael, although he has reached adulthood, as defined in the regulations." The decision concludes, "San Francisco County shall implement a plan to provide the services necessary for Michael Blackburn to receive proper placement, including the appointment of a legal guardian, if necessary."

A superior court hearing in the writ proceeding was held on June 23, 1978. Counsel for appellant stated at the outset that "because Michael Blackburn through his guardian ad litem does not wish to become a Ward of the court and because Michael has become a client of Golden Gate Regional Center[2] and anticipates placement in a program by that agency, we do not intend in this action to seek the County's compliance with the rehearing decision of May 17th, 1978. [¶] The sole question coming before this court, therefore, is whether or not [Michael] is entitled to enforcement of the fair hearing decision of May 26th, 1977, by payment of retroactive AFDC-BHI benefits in an attempt [*sic*: amount] which would have been sufficient to maintain Michael at the Western Institute of Human Resources [had he been enrolled there].... Section 10963 [of the Welfare and Institutions Code] requires the implementation by the County of Unfavorable Hearing Decisions pending rehearing.... The amount of our claim, therefore, [based on the fees which would have been paid to the Western Institute, had Michael been residing there] is $23,645.00, representing unpaid AFDC-BHI from

appellant's reply brief without objection from respondent. (Evid. Code, § 452, subd. (c).)

2"The Lanterman Act [enacted in 1969] provides for the establishment of a statewide network of regional diagnostic, counseling and service centers for [developmentally disabled] persons and their families .... The regional center accepts a [developmentally disabled] person as a client and then assesses the needs of that person and purchases the services necessary to meet the [ ] person's needs." (Spencer, *Thursday's Child: Legal Problems of Families with a Mentally Retarded Member* (1973) 6 U.C.Davis L.Rev. 40, 46; see Welf. & Inst. Code, § 4500 et seq.; Health & Saf. Code, former § 38000 et seq.)

150

September 1976 to May 1978."[3] Appellant asked for costs, reasonable attorney's fees, and prejudgment interest as well.

The trial court entered judgment denying the peremptory writ[4] and this appeal followed.

## Discussion

■ Welfare and Institutions Code section 10963 provides, "The county director shall comply with and execute every decision of the director [of the state agency] rendered pursuant to this chapter."[5] The statutory language is mandatory and applies to initial fair hearing decisions pending rehearing. (*Taylor* v. *McKay* (1975) 53 Cal.App.3d 644 [126 Cal.Rptr. 204].) ■ Traditional mandamus is the remedy by which compliance may be compelled. (*Ibid.*) Once eligibility for social services has been established, moreover, an award of retroactive payments is appropriate even though the services for which payments are sought were never performed. (*Leach* v. *Swoap* (1973) 35 Cal.App.3d 685 [110 Cal.Rptr. 62] [retroactive attendant care grant; rejecting distinction between services and basic subsistence aid]; see also *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 677 [131 Cal.Rptr. 789, 552 P.2d 749]; *Mooney* v. *Pickett* (1972) 26 Cal.App.3d 431, 435 [102 Cal.Rptr. 708].) ■ Prejudgment interest and costs are also recoverable in cases of this kind. (*Tripp* v. *Swoap, supra,* 17 Cal.3d at p. 678 et seq.)[6]

[3]The amount was demonstrated by interrogatories addressed to Mr. Stratton (a non-party) and received in evidence pursuant to stipulation.

Appellant's counsel conceded at the hearing that Michael had been receiving SSI benefits as of the date of the application for AFDC-BHI. He argued, however, that under the governing regulations an applicant for AFDC-BHI "may voluntarily relinquish SSI benefits in favor of AFDC benefits. In effect, he may choose which program he prefers.... [And] he may do so retroactively."

[4]The court found "that the conditions precedent upon which the [fair hearing] decision would become operative have not yet taken place. Petitioners therefore have no clear, present or specific legal right to the writ sought herein." The court also found that the Department of Benefit Payments had no jurisdiction over "programs entirely funded by the counties"; that Michael was not eligible for AFDC benefits; that an award of AFDC benefits to an adult recipient of SSI benefits would be unlawful; and that to issue the writ would be futile, because respondent lacks the capacity and authority to distribute public funds in an unlawful manner.

[5]The state agency to which section 10963 impliedly refers, formerly the Department of Benefit Payments, is presently the Department of Social Services or the Department of Health Services, as the case may be. (See Welf. & Inst. Code, § 10950.)

[6]The *Tripp* court upheld an award of attorney's fees as well, but that case was an administrative mandamus proceeding; and the statute (Welf. & Inst. Code, § 10962) which authorizes review of fair hearing decisions by administrative mandamus express-

■ Respondent's efforts in the superior court focused primarily upon the authority of the Department of Benefit Payments to render the order contained in the initial fair hearing decision. Respondent's counsel argued, "It was absolutely impossible for [AFDC-BHI] eligibility to attach. Therefore, the award of State AFDC-BHI benefit[s] on its face is void as in excess of their jurisdiction." The argument, renewed on appeal, is without merit.

It is undisputed that Michael Blackburn was not eligible for *federal* AFDC-BHI benefits. State eligibility is governed by Welfare and Institutions Code section 11253, which provides: "Aid may not be granted under the provisions of this chapter to or in behalf of any child over the age of 16 unless: (a) He is less than 21 years of age and is regularly attending school or a training program, or if enrolled in an institution of higher education, attending regularly, achieving a passing grade and making progress according to standards set by the department, or (b) He is physically or mentally disabled, or (c) He is employed . . . ." Although subdivision (b) of section 11253 contains no age limit, this court held in *Bentley* v. *Swoap* (1974) 43 Cal.App.3d 165, 168 [117 Cal. Rptr. 479], "that it was the legislative intent to terminate benefits under AFDC at the age of 18 years except as provided in subdivision (a) of section 11253 which extends such benefits to a child up to age 21 when he is regularly attending school or a training program." The fair hearing decision sought to be enforced in this case provides that Michael's "attendance [at the Western Institute] would fulfill the [latter] requirement."[7] The correctness of that finding is not properly at issue here.

---

ly provides for the recovery of such fees. (*Tripp* v. *Swoap, supra,* 17 Cal.3d at p. 680.) Section 10962 does not apply to the case at bar, which was brought not to review the initial fair hearing decision but to enforce it.

We conclude, however, that the enforcement of appellant's rights in this case will confer a significant nonpecuniary benefit on the general public by vindicating "the strong public policy in favor of retroactive payment of welfare benefits" (*Tripp* v. *Swoap, supra,* 17 Cal.3d at p. 683); that the necessity and financial burden of private enforcement are such as to make an award of attorney's fees appropriate; and that such fees should not in the interest of justice be paid out of the recovery. (See Code Civ. Proc., § 1021.5.) Appellant will therefore be entitled to recover reasonable attorney's fees on remand.

[7]The fair hearing decision cites the implementing regulations contained in the Department of Benefit Payments [presently Department of Social Services] Manual of Policies and Procedures (MPP), rather than the statute. For persons between ages 18 and 21, state AFDC-BHI eligibility is predicated in part upon participation in a "curriculum of study or training leading to a certificate, diploma or degree" (MPP 42-103.1). Appellant's counsel represented in a memorandum filed in the superior court, "The Western Institute of Human Resources is . . . a small community home for

Proceedings in *traditional* mandamus for enforcement of an initial fair hearing decision are collateral to proceedings which may be instituted for administrative rehearing, and for judicial review of the director's final determination.[8] Welfare and Institutions Code section 10962 provides that a petition for *administrative* mandamus "shall be the exclusive remedy available to the . . . county for review of the director's [*final*] decision." In such a proceeding, the *substantial evidence* standard would pertain over the *entire administrative* record. (Code Civ. Proc., § 1094.5; see *Tripp* v. *Swoap, supra*, 17 Cal.3d at pp. 676-677.) ■ ■■■ To require appellant to prove eligibility de novo in the instant case would clearly conflict with the statutory scheme for administrative and judicial review of the decision sought to be enforced.[9] The trial court erred in concluding that Michael Blackburn was ineligible for benefits.

Respondent contends that AFDC-BHI eligibility is predicated upon a discretionary determination by the county that out-of-home placement is appropriate.[10] The administrative hearing officer, however, and the

---

the care and training of troubled young adults. [¶] On the premises of this facility a school program is operated for developmentally disabled persons. Approximately seven students are enrolled in the school program." The memorandum implies that Michael had been enrolled in the "school program" during 1974 and 1975, but does not state whether the program offers a certificate or diploma. The question whether the fair hearing decision is supported by the administrative record, however, is not a question to be resolved in these proceedings; the administrative record was not submitted to the trial court or to this court for review.

[8]The administrative rehearing decision in this case notes that Michael was "probably" eligible for AFDC-BHI, and it seems wholly fortuitous that the decision was adopted before judgment was entered in the superior court. (Cf. *Taylor* v. *McKay, supra*, 53 Cal.App.3d at p. 647.) An earlier superior court determination concerning eligibility, if valid, would have rendered the rehearing proceedings moot.

[9]Even if the initial decision were found erroneous on rehearing or direct review, the county would remain liable for interim payments. The right to receive benefits vests when the initial decision is adopted by the director. (See *Tripp* v. *Swoap, supra*, 17 Cal.3d at p. 683; *Taylor* v. *McKay, supra*, 53 Cal.App.3d 644.) "Absent a statute so declaring, a recipient of public assistance is not liable for reimbursement of the state or county for welfare aid properly paid." (*Oliva* v. *Swoap* (1976) 59 Cal.App.3d 130, 136 [130 Cal.Rptr. 411].) The recoupment statute expressly provides that the applicant or recipient "is entitled to rely upon the award of public social services as being accurate" (Welf. & Inst. Code, § 11004, subd. (c)); and immediate payment of aid pursuant to an initial fair hearing decision is not only proper, it is required. The risk of error is to be borne by the government, rather than the applicant or recipient of social services.

[10]Citing MPP 44-323.114, respondent submits that a voluntary placement agreement signed by a county representative is required. That regulation, however, did not become effective until almost a year *after* the initial fair hearing decision, and was apparently intended to implement Welfare and Institutions Code section 16552, which defines "voluntary placement agreement." The latter section is a part of chapter 5.5, division 9,

director upon his adoption of the initial fair hearing decision, found that a plan existed for Michael's placement at the Western Institute; and it is *undisputed* that out-of-home placement was and remains appropriate. Once the need for placement has been established and the county has been ordered to pay, respondent is no longer vested with any remnant of discretion in the determination whether to grant or deny relief.

The fair hearing decision ordered the county to restore AFDC-BHI "effective the beginning date of aid had aid been approved *or* the date from which Michael *was* attending school full-time whichever is *later.*" (Italics added.) Respondent submits (and the trial court found) that since "neither of these events" occurred, appellant has no right to the writ. Respondent's construction of the order, however, renders it meaningless. Michael could not attend "school" without the grant, and the decision clearly intends for aid to be restored. We conclude that what was intended by the order is this: As of the date this decision is adopted by the director, if Michael has *already* been enrolled at the Western Institute, then pay benefits retroactively from the date of enrollment or from the date of the application for benefits, whichever is later; but if Michael has not yet been enrolled, then pay benefits *now*, to facilitate enrollment. Respondent conceded at oral argument that the foregoing interpretation is reasonable; and nothing in the record indicates that respondent sought clarification of the order before refusing to comply with it.[11]

---

of the code. Chapter 5.5 (added by Stats. 1976, ch. 977, § 24), entitled "Voluntary Placement of Minors," applies only to "demonstration counties." (See, e.g., Welf. & Inst. Code, §§ 16550, 16552.) The code does not define that term; but respondent represented (without citing authority) in a trial memorandum that San Francisco is *not* a "demonstration county." In any event, the statute adding chapter 5.5 to the code provides in a section which was not codified, "This act shall apply *only* to children declared dependents of the juvenile court of a demonstration county *on or after July 1, 1977,* and to those voluntarily placed by their parents pursuant to Chapter 5.5 ... *on or after such date.*" (Stats. 1976, ch. 977, § 2.5; italics added.) The initial fair hearing decision in this case was adopted on May 26, 1977, so that the statute by its express terms, and the implementing regulations, do not apply.

[11]Respondent submits (and the trial court found) that to pay AFDC-BHI to an adult recipient of SSI would be illegal. The only authority cited anywhere in the record on this point is a purported state regulation, "EAS [MPP] 44-213.51," which is not presently contained in the MPP as cited. But in any event, the regulations clearly provide that "A person or his/her representative who believes the applicant meets the eligibility requirements for more than one category of aid has the right to choose the type of aid for which he/she will apply." (MPP 40-109.2.) That choice was not precluded by Michael's receipt of SSI benefits as of the date of the application for AFDC-BHI, and the county could not properly refuse to comply with the initial fair hearing decision on that ground.

The only remaining issue is whether Aurelia Watson had lawful authority, after Michael had become an adult, to apply for social services on his behalf or to consent to his placement in a residential care facility. The trial court made no findings in this regard. Presumably the director considered whether Aurelia Watson was a proper claimant; and the fair hearing decision did not order a civil commitment, it merely ordered restoration of aid "to facilitate" Michael's placement. The county refused, in contravention of both statute and case law, to comply with that order. Under the circumstances, appellant is entitled to a peremptory writ of mandate, as prayed.

The judgment will therefore be reversed and the cause remanded to the trial court with directions to issue a writ commanding respondent to pay retroactive aid to appellant in the sum of $23,645, together with prejudgment interest, trial costs, and a reasonable fee, as determined by the trial court, for the services of appellant's trial attorney. ■ The trial court is further directed to determine a reasonable attorney's fee to be awarded appellant's attorney for his services on appeal.

Reversed and remanded.

Racanelli, P. J., and Elkington, J., concurred.