[No. F006320. Fifth Dist. Mar. 5, 1986.]

IRENE BOEHM et al., Petitioners, v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
COUNTY OF MERCED et al., Real Parties in Interest.

## COUNSEL

Melinda R. Bird, Richard A. Rothschild and Paul Babwin for Petitioners.

No appearance for Respondent.

William E. Gnass, County Counsel, and David R. Ortega, Deputy County Counsel, for Real Parties in Interest.

## OPINION

**HAMLIN, J.**—Petitioners Irene Boehm and other Merced County residents who receive general assistance welfare payments (GA) seek mandamus to compel the Superior Court of Merced County to issue a preliminary injunction against the reduction of GA by the Merced County Board of Supervisors (the County) and the Merced County Department of Human Resources (the Department) and to grant petitioners' motion for summary judgment.

The issue presented is whether the County acted arbitrarily and capriciously in reducing GA grants to levels sufficient to provide only minimum subsistence needs for food and shelter (including utilities). We hold that without a study which establishes that the other basic necessities—clothing, transportation and medical care—are otherwise provided to those eligible to receive GA, the GA benefits, as a matter of law, do not conform to the mandate of Welfare and Institutions Code section 17000[1] and its companion provisions. We will grant the writ to compel the trial court to issue a preliminary injunction against reduction of the benefits and to grant petitioners' motion for summary adjudication of certain issues.

BACKGROUND

In July 1983 the County reduced GA for indigent county residents from $198 per month for an individual to $175 a month, with proportional reductions for larger family sizes. Petitioners sought to enjoin the reductions. The trial court denied the request.

On appeal, in *Boehm* v. *County of Merced* (1985) 163 Cal.App.3d 447, 452 [209 Cal.Rptr. 530], this court reversed, holding that the County acted arbitrarily and capriciously by reducing GA without basing that reduction on a study determining the minimum subsistence needs of its indigent residents. However, it was unnecessary to define minimum subsistence because the County did not base its reduction on a study of any minimum subsistence needs.

Following the remand, the Department conducted two studies of minimum subsistence needs. Each study concerned only the minimum need for food and housing (including utilities). The County fixed GA at $175 per month for an individual based on the first study and then raised the level to $185 per month based on the second study.

On August 1, 1985, petitioners sought a preliminary injunction and summary adjudication against this grant reduction. They filed declarations in support of their motion for summary adjudication. The County filed no opposing declarations. Respondent court denied petitioners' request and stated:

"The facts now before us show:

"1. Pursuant to a needs study presented by the Department of Human Resources to the Board of Supervisors on February 15, 1985, the Board

---

[1]Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

unanimously found that $185 per month would meet the subsistence needs of General Relief (hereinafter called GR) recipients.

"2. The study dealt with housing, certain personal and household items, and food only. It did not purport to cover transportation, clothing, or medical expenses. It purported to cover utilities by 'factoring them into the cost of shelter.'

"3. The action taken by the Board of Supervisors February 19, 1985, approved a recommendation of the Department of Human Resources and County Counsel and established '$185 as the minimum subsistence needs in Merced County for one person.' The action did not make specific findings."

Petitioners argue that the trial court abused its discretion in denying an injunction and summary judgment. They request a writ of mandate directing the court to enjoin the County from reducing GA below the 1983 level and to order retroactive payments at the 1983 level, along with cost-of-living increases from the date of reduction. Real parties in interest contend summary judgment was properly denied because there are material issues of fact in controversy.

DISCUSSION

I.

Mandamus is issued "to compel the performance of an act which the law specifically enjoins, . . ." (Code Civ. Proc., § 1085.) Although mandamus does not generally lie to control the exercise of judicial discretion, the writ will issue "where, under the facts, that discretion can be exercised in only one way." (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

The decision to grant a preliminary injunction rests in the sound discretion of the trial court. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 211].) However, the court has "no discretion to act capriciously." (*Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].) It must exercise its discretion "in favor of the party most likely to be injured." (*Ibid.; Riviello* v. *Journeymen Barbers etc. Union* (1948) 88 Cal.App.2d 499, 510 [199 P.2d 400].) If the denial of an injunction would result in great harm to the plaintiff, and the defendants would suffer little harm if it were granted, then it is an abuse of discretion to fail to grant the preliminary injunction. (*Ibid.*) Trial courts should consider two interrelated questions in deciding whether or not to issue a preliminary injunction: (1) Are the plaintiffs likely to suffer

greater injury from a denial of the injunction than the defendants are likely to suffer from its grant? (2) Is there a reasonable probability that the plaintiffs will prevail on the merits? (*IT Corp.* v. *County of Imperial, supra,* at pp. 69-70.)

■ A writ of mandate is also an appropriate remedy for improperly denied summary judgment motions. In *Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 410-411 [93 Cal.Rptr. 338], the court stated: "A writ of mandate is a proper remedy to compel a trial court to grant a motion for summary judgment where the affidavits in support of the moving party are sufficient to sustain a judgment in his favor, and his opponent does not by counteraffidavit show facts sufficient to present a triable issue of fact. (*Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435, 441 . . .; *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266-267 . . . .) However, writ relief is to be used sparingly, with doubts resolved in favor of denial of review. 'It may be assumed that the meritorious movant who has been denied his summary relief will ultimately prevail in the trial court without more trouble and expense than would have attended his efforts prior to the existence of the summary remedy.' (*Whitney's at the Beach* v. *Superior Court, supra,* at p. 266.) In determining whether summary judgment is warranted, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. (*Whitney's at the Beach* v. *Superior Court, supra,* at p. 267.)"
■ A motion for summary judgment is addressed to the sound discretion of the trial court. In the absence of a clear abuse of discretion, the judgment will not be disturbed on appeal. (*Brewer* v. *Home Owners Auto Finance Co.* (1970) 10 Cal.App.3d 337, 341 [89 Cal.Rptr. 231].)

## II.

■ GA is a program of last resort for indigent and disabled persons unable to qualify for other kinds of public benefits. GA is often the only means by which they can obtain the basic necessities. (See *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 264 [25 L.Ed.2d 287, 296, 90 S.Ct. 1011]; *Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231]; see generally, Note, *General Assistance in California* (1984) 12 San Fernando Val.L.Rev. 31.) The program is unique because the responsibility for funding and administering it rests entirely upon individual county governments.

Section 17000 provides that "Every county . . . *shall relieve and support all* incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or

by state hospitals or other state or private institutions.'' (Italics added.) Section 17001 imposes a mandatory duty on each county to adopt standards of aid and care for the indigent and dependent poor. (*City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 47 [128 Cal.Rptr. 712].) Counties do, however, have discretion to determine eligibility for, the type and amount of, and conditions to be attached to, indigent relief. (*County of L.A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455, 458 [260 P.2d 41].) The courts have no authority to interfere '' '. . . in the absence of a clear showing of fraud or arbitrary or capricious conduct. . . .' '' (E.g., *Adkins* v. *Leach* (1971) 17 Cal.App.3d 771, 778-779 [95 Cal.Rptr. 61].)

Nonetheless, a county's discretion can be exercised only within fixed boundaries and consistent with the underlying purpose of the statutes which impose the duty. (See *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 679.) Section 10000 outlines the statutory purpose and legislative intent of division 9 (§§ 10000-18971), which contains the provisions governing GA (§§ 17000-17410).

"The purpose of this division is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life, and without discrimination on account of race, national origin or ancestry, religion, sex, marital status, or political affiliation; and that aid shall be so administered and services so provided, to the extent not in conflict with federal law, as to encourage self-respect, self-reliance, and the desire to be a good citizen useful to society." (§ 10000.) Sections 10000, 17000, and 17001 are to be interpreted along with section 11000, which states. "The provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program."

Our Supreme Court recognized in *County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 401 [179 Cal.Rptr. 214, 637 P.2d 681], that courts play an important role in assuring that public welfare laws are liberally interpreted and actively enforced.

'' 'A sound public policy prompts the efforts of the state to preserve the self-reliance of its citizens, even if at extra expense . . . . The state recognizes that many of its citizens are indigent, but it still wishes them to be independent. The relief legislation was enacted with that purpose in view . . . . The evolution of public welfare has been from public "charity" to-

ward social justice. Courts should facilitate such development by an enlightened and liberal interpretation of all welfare laws.' " (*Ibid.*, quoting *Industrial Commission of Ohio* v. *McWhorter* (1934) 129 Ohio St. 40 [1 Ohio Ops. 353 193 N.E. 620, 622-623, 96 A.L.R. 1150]. See also *Goldberg* v. *Kelly, supra,* 397 U.S. at pp. 264-265 [25 L.Ed.2d at pp. 296-297]; *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 208-209 [211 Cal.Rptr. 398, 695 P.2d 695].)

Similarly, in *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d at page 50, the court stated: "We have no doubt that when statutes affecting the well-being—perhaps the very survival—of citizens of this state are being violated with impunity by the [county], an agent of the state, the courts, as final interpreters of the law, must intervene to enforce compliance."

The County *must* set GA standards of aid and care that provide benefits necessary for basic survival. (See generally, *City and County of San Francisco, supra,* 57 Cal.App.3d at p. 49; *General Assistance in California, supra,* at p. 39.) In order to determine the level of GA to be paid, the County must conduct a study of what is necessary for minimum subsistence. (*Boehm* v. *County of Merced, supra,* 163 Cal.App.3d at p. 452.) Otherwise, we are left with a "standardless administration of general assistance [which] places the hungry and poor at the administrator's whim and does little to foster the belief, so important in a democratic society, that justice has been served. . . ." (*Baker-Chaput* v. *Cammett* (D.N.H. 1976) 406 F.Supp. 1134, 1139.)

Minimum subsistence, at the very least, must include allocations for housing, food, utilities, clothing, transportation and medical care. The State of California includes these items among the necessities for a low income family on which it bases changes in the cost of living. (See §§ 11453, 11454. See also *Goldberg* v. *Kelly, supra,* 397 U.S. at p. 264 [25 L.Ed.2d p. 296]; *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 675; *State* ex rel. *Van Buskirk* v. *Wayne TP., etc.* (1981 Ind.App.) 418 N.E.2d 234, 240; Note, *Due Process in the Administration of General Assistance: Are Written Standards Protecting the Indigent?* (1984) 59 Ind.L.J. 443, 453-454; Good, *Freedom From Want: The Failure of United States Courts to Protect Subsistence Rights* (1984) 6 Hum.Rts.Q. 335; Wagner, *General Assistance in South Dakota: A Need for Written, Objective and Ascertainable Standards* (1982) 27 S.D.L.Rev. 201.)

In *Mooney* v. *Pickett, supra,* 4 Cal.3d at page 675, our Supreme Court pointed out that the employable-single-man rule under attack in that case "may deny such persons 'the means to obtain *essential food, clothing, hous-*

*ing and medical care.'*" (Italics added.) (See *Goldberg* v. *Kelly, supra,* 397 U.S. at p. 264 [25 L.Ed.2d at p. 296].)

The Universal Declaration of Human Rights provides: "Everyone has the right to a standard of living adequate for the health and well being of himself and of his family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond his control." (Universal Declaration of Human Rights, art. 25(1), adopted Dec. 10, 1948; Gen. Assm. Res. 217A(111), U.N. Doc. A/810 (1948).)

Indeed, it defies common sense and all notions of human dignity to exclude from minimum subsistence allowances for clothing, transportation and medical care. Such allowances are essential and necessary to " '"encourage [self-respect and] self-reliance' . . . in a 'humane' manner consistent with modern standards." (See *Robbins* v. *Superior Court, supra,* 38 Cal.3d at p. 210; §§ 10000, 17000.) Without a clothing allowance, recipients must wear tattered clothing and worn out shoes. The lack of adequate and decent clothing and essential transportation is damaging both to recipients' self-respect and their ability to obtain employment. Finally, to leave recipients without minimum medical assistance is inhumane and shocking to the conscience.

We conclude that the GA grant fixed by the County must include an appropriate allowance for each of the basic necessities of life: food, clothing, housing (including utilities), transportation and medical care. If the GA grant fails to provide for any of those needs, the omission must be based on a study that demonstrates the need omitted will be satisfied by some other program available to the GA recipients. Nothing less will satisfy the requirements of sections 10000, 17000 and 17001 when fairly and equitably construed as required by section 11000.

III.

■ In the instant case the County reduced GA from $198 to $175 per month and then raised it to $185 based on two studies by the Department. The studies encompassed only food and housing, including utilities. Petitioners contend these studies, as they pertain to housing, are inadequate. Additionally, they claim the County's failure to consider all of the basic necessities recognized above makes the GA grants arbitrary and capricious as a matter of law. ■ Finally, petitioners assert that their motion for summary judgment should have been granted because the County failed to file counteraffidavits creating a contested factual issue.

First, the study pertaining to housing reveals material facts in controversy even in the absence of counteraffidavits. That study shows that housing is available, at the rent levels set by the County, in Los Banos, Dos Palos, and possibly in Merced from the Housing Authority. While petitioners correctly point out that the County failed to file counteraffidavits, the trial court was able to rule by analyzing the documents before it that there was a factual controversy over the adequacy of the housing allowance. If this were the sole basis on which petitioners attack the adequacy of the County's GA grant, the trial court's denial of petitioners' motion for summary judgment would be upheld.

■ Petitioners' principal contention is that GA is inadequate as a matter of law because the County fixed the level of GA without considering all of the necessities of life and without any assurance that these necessities would otherwise be provided for. We agree. The record reveals no dispute that the County's study was restricted solely to food and housing (including utilities) and that the County had before it no study that demonstrated that clothing, essential transportation and medical care were being provided by any other program available to GA recipients.

This court is not unmindful of the fiscal restraints imposed by Proposition 13 and the consequent need for strict control of all county expenditures. However, budgetary constraints cannot justify excluding from minimum subsistence grants to the indigent allowance for each of the basic necessities of life: food, housing (including utilities), clothing, transportation and medical care. (See *Robbins* v. *Superior Court, supra,* 38 Cal.3d at p. 217; *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 675.) We therefore conclude that the County acted arbitrarily and capriciously in fixing its GA grant without considering the recipients' need for a clothing, transportation and medical care allowance. Thus the trial court abused its discretion in denying petitioners a preliminary injunction against the reduction in GA and summary adjudication of certain basic issues in petitioners' action against the County.

In *Mooney* v. *Pickett, supra,* 4 Cal.3d at page 676, the Supreme Court stressed that section 17000 "imposes a mandatory duty upon the counties to support 'all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident.'" (Fn. omitted.) Consequently, the County's obligation to provide benefits at the level before the unlawful reduction created an indebtedness due petitioners as of the date they were entitled to those benefits. (See *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81, 85-86 [162 P.2d 630]; *Mooney* v. *Pickett, supra,* 4 Cal.3d 669, on remand (1972) 26 Cal.App.3d 431, 435-436 [102 Cal.Rptr. 708].) GA recipients are therefore entitled to receive retroactive payments in the amount of the difference between their GA entitlement before the unlawful reduction

in 1983 and the amount actually received, plus prejudgment interest, attorney's fees and costs. (*Blackburn* v. *Sarsfield* (1981) 125 Cal.App.3d 143, 150, 154 [178 Cal.Rptr. 15]; Welf. & Inst. Code, § 10962.)

Petitioners contend this court should order immediate increases in GA to reflect increases in the cost of living from the date the County set GA at $198 for an individual. However, petitioners cite no authority to support their contention that this court should interfere, even to this extent, with the County's discretion to fix the amount of the GA grant. We therefore decline to issue such an order.

■ The petition is granted in substantial part; a peremptory writ of mandate shall issue directing respondent court (1) to vacate its order denying a preliminary injunction; (2) to enter an order granting a preliminary injunction against the County's reduction of GA below $198 per month for an individual and commensurate allowances for larger family sizes unless based on an appropriate study; (3) to grant summary adjudication that: (a) petitioners are entitled to receive retroactive payments from the County in the amount of the difference between their GA entitlement before the unlawful reduction in 1983 and the amount actually received since that reduction, plus prejudgment interest, attorneys' fees and costs; and (b) the County shall initiate and complete without unnecessary delay a study of all the needs of its indigent residents consistent with this opinion and provide GA at appropriate levels based on that study; and (4) to determine on remand whether petitioners' suit is to be certified as a class action and, if so, the identification of the class.[2] (*Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 581-583 [125 Cal.Rptr. 221]; see also *Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 233, pp. 286-287.) In all other respects the petition for writ of mandate is denied.

Brown (G. A.), P. J., and Woolpert, J., concurred.

A petition for a rehearing was denied April 4, 1986, and the judgment was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied May 21, 1986.

---

[2]In the trial court, petitioners sought relief for all GA recipients but failed to designate their suit against the County a class action. The court recognized the complaint was on behalf of all GA recipients; it did not certify this as a class action before appeal because it was not asked to do so. Petitioners asked specifically for summary adjudication that all Merced County GA recipients were entitled to retroactive payment of the amount of the unlawful reduction. With knowledge of that request, the County did not challenge petitioners' right to seek relief for all GA recipients as a class; such failure waived certification before appeal.