[No. A061238. First Dist., Div. One. May 31, 1994.]

WELFARE RIGHTS et al., Plaintiffs and Respondents, v.
JOHN FRANK, as Director, etc., et al., Defendants and Appellants.

416

**COUNSEL**

Stephen R. Nielson, County Counsel, and Wendy B. Chaitin, Deputy County Counsel, for Defendants and Appellants.

De Witt W. Clinton, County Counsel, Roberta M. Fesler, Assistant County Counsel, Patrick A. Wu, Principal Deputy County Counsel, and Ada Treiger, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Richard A. Rothschild, Robert D. Newman and James Stoepler for Plaintiffs and Respondents.

## OPINION

**DOSSEE, J.**—Defendants John Frank, in his capacity as Director of the Humboldt County Department of Health and Social Services, and the Humboldt County Board of Supervisors (the County) appeal from the trial court's order granting the motion of plaintiffs Welfare Rights and eight individuals (plaintiffs) to enforce a consent decree.[1] The County asserts that a 1992 statutory amendment nullifying a portion of the 1989 consent decree is valid and enforceable and, therefore, that plaintiffs are no longer entitled to seek enforcement of that portion of the consent decree. We agree and reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 1982, plaintiffs commenced a class action for injunctive and declaratory relief against the County. Plaintiffs' complaint alleged that the County's general assistance grant levels were "inadequate to provide a decent and healthful standard of living to recipients in Humboldt County and thus constitute a violation by [the County] of Welfare and Institutions Code, section 17000."[2] Plaintiffs sought to enjoin the County from providing general assistance grants "in an amount less than what is reasonably calculated as necessary to obtain the currently available decent housing, a nutritionally adequate diet, and other necessities of life in Humboldt County."

On October 24, 1988, following a bench trial, the trial court entered a judgment in which it found that the studies the County had used to set its general assistance grant levels were "invalid in that the studies failed to

---

[1]Plaintiff Welfare Rights is a private unincorporated social service agency which assists Humboldt County residents in obtaining welfare benefits and social services. The eight individual plaintiffs are a Humboldt County taxpayer and seven Humboldt County general assistance recipients.

[2]Unless otherwise noted, all subsequent statutory references are to the Welfare and Institutions Code.

"County general assistance 'is a program of last resort for indigent and disabled persons unable to qualify for other kinds of public benefits.' [Citation.] 'The program is unique because the responsibility for funding and administering it rests entirely upon individual county governments.' [Citation.]" (*Whitfield* v. *Board of Supervisors* (1991) 227 Cal.App.3d 451, 456 [277 Cal.Rptr. 815].) The statutory basis for this responsibility is contained in section 17000, which provides as follows: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

determine minimum subsistence requirements for housing, utilities, food, personal care items, transportation, and medical care in Humboldt County and the standards failed to provide for such minimum subsistence needs as required under Welfare & Institutions Code § 17000." (See generally, *Boehm v. Superior Court* (1986) 178 Cal.App.3d 494, 501 [223 Cal.Rptr. 716] [In setting general assistance grant levels, a county "must conduct a study of what is necessary for minimum subsistence. [Citation.] . . . [¶] Minimum subsistence, at the very least, must include allocations for housing, food, utilities, clothing, transportation and medical care."].) The judgment ordered the County to prepare valid studies and to appear in court on December 20, 1988, so that the studies could be considered.

On December 12, 1988, before the scheduled hearing date on the County's studies, the parties reached an agreement entitled "Stipulated Current General Relief Standards." The agreement set general assistance grant levels at $376 per month, which was equal to the $326 grant level for Aid to Families with Dependent Children (AFDC) plus $50. The agreement provided that the grant level would "increase annually according to the AFDC MBSAC Annual [cost of living adjustment] [plus] $50."[3] On December 16, 1988, the parties reached a second agreement containing detailed provisions for the distribution of retroactive benefits. On February 28, 1989, the trial court filed a document entitled "Consent to Manner of Satisfaction of Judgment" (the Consent Decree), in which it adopted both of the parties' agreements "as the order of this court made binding upon the parties and all members of the plaintiff class." The court expressly retained jurisdiction to enforce the terms of the Consent Decree.

In 1991, approximately two years after the adoption of the Consent Decree, the Legislature enacted section 17000.5.[4] Under subdivisions (a) and (b) of section 17000.5, counties could discharge their general assistance obligations by setting grant levels at 62 percent of a guideline that is equal to

---

[3] The MBSAC is the minimum basic standards of adequate care for AFDC recipients. (See §§ 11452-11453.)

[4] Section 17000.5 was effective June 30, 1991, and, in its original form, provided as follows:

"(a) The board of supervisors in any county may adopt a general assistance standard of aid that is 62 percent of a guideline that is equal to the 1991 federal official poverty line and may annually adjust that guideline in an amount equal to any adjustment provided under Chapter 2 (commencing with Section 11200) of Part 3 [AFDC] for establishing a maximum aid level in the county.

"(b) The adoption of a standard of aid pursuant to this section shall constitute a sufficient standard of aid.

"(c) Nothing in this section is intended to abrogate preexisting settlements.

"(d) For purposes of this section, 'federal official poverty line' means the same as it is defined in subsection (2) of Section 9902 of Title 42 of the United States Code."

the 1991 federal official poverty line and by annually adjusting that guide-line by the amount of any adjustment provided under the AFDC program. (See *ante,* fn. 4.) Any county which followed this formula had, by definition, set "a sufficient standard of aid" and did not need to justify its grant levels by conducting a study of minimum subsistence needs. (*Ibid.; Oberlander* v. *County of Contra Costa* (1992) 11 Cal.App.4th 535, 542 [15 Cal.Rptr.2d 182].) Significantly, however, subdivision (c) of section 17000.5 specifically exempted counties under "preexisting settlements." (See *ante,* fn. 4.)

On September 14, 1992, the Governor approved Assembly Bill No. 2883 (AB No. 2883). (See Stats. 1992, ch. 721.) Section 1 of AB No. 2883 amended section 17000.5 to delete the exemption for "preexisting settle-ments" previously contained in subdivision (c).[5] (*Ibid.*) In section 2 of AB No. 2883, the Legislature made the following declaration of its intent: "(a) The Legislature finds and declares that there is a fiscal emergency in the State of California, which was not anticipated and that affects the ability of counties to provide welfare services in the state. Counties that have entered into agreements, including court-ordered stipulated judgments, which re-quire the payment of general assistance grants above the amounts provided under [AFDC] will suffer serious consequences if forced to maintain those levels. Therefore, it is the intent of the Legislature to abrogate the provisions of existing agreements, including court-ordered stipulated judgments, that require counties to provide general assistance grants above the current levels provided under [AFDC]. [¶] (b) The provisions of any agreement, including a court-ordered stipulated judgment, that requires a county to provide a monthly general assistance grant greater than the amount provided under [AFDC] are null and void." AB No. 2883 took effect immediately.

Following the passage of AB No. 2883, and based on its nullification provision, the County began taking steps to set its general assistance grant levels based on the formula contained in section 17000.5, subdivision (a), rather than on the formula contained in the Consent Decree. The effect of this change would be to reduce the general assistance grant for a single, nonhomeless person living alone from $395 per month to $293 per month. On November 13, 1992, in anticipation that the proposed change would be approved shortly, plaintiffs filed a motion to enforce the terms of the Consent Decree. Plaintiffs asserted that the nullification provision of AB No. 2883 violated the contract clauses of the California and United States

---

[5]Section 1 of AB No. 2883 made several other amendments to section 17000.5 as well. (See Stats. 1992, ch. 721.) Since these amendments are not pertinent to our analysis of the issues raised on this appeal, we do not discuss them further.

Constitutions (Cal. Const., art. I, § 9; U.S. Const., art. I, § 10, cl. 1) and the separation of powers clause of the California Constitution (Cal. Const., art. III, § 3).

On November 17, 1992, the county board of supervisors approved Resolution No. 92-133, which adopted the reductions to general assistance grant levels authorized by AB No. 2883 and section 17000.5. On December 30, 1992, the trial court stayed implementation of the reductions. On February 3, 1993, the court granted plaintiffs' motion to enforce the Consent Decree. The court concluded that "[t]he result of AB2883, and its nullification clauses, is to impair an otherwise valid contract." The court found that the County had failed to justify the impairment under its police power.[6] The County has filed a timely notice of appeal. (See *Redevelopment Agency* v. *Goodman* (1975) 53 Cal.App.3d 424, 429 [125 Cal.Rptr. 818] [order relating to enforcement of judgment is appealable].)

## II.  DISCUSSION

Section 17000.5 effected a major change to counties' general assistance obligations. Prior to the enactment of section 17000.5, counties were required to provide for the "minimum subsistence needs" of general assistance recipients and to justify their grant levels by conducting studies of these needs. (See, e.g., *Boehm* v. *Superior Court, supra,* 178 Cal.App.3d at p. 501.) After the enactment of section 17000.5, counties which set their grant levels according to its prescribed statutory formula were no longer required to demonstrate that they had met the minimum subsistence needs of general assistance recipients. Rather, they were conclusively presumed to have provided "a sufficient standard of aid." (See *ante,* fn. 4; *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at p. 542.)

In its original form, section 17000.5 did not cover counties, like the County here, that were under "preexisting settlements." (See *ante,* fn. 4.) AB No. 2883 extended the reach of section 17000.5 to these counties, declaring that consent decree provisions requiring counties "to provide a monthly general assistance grant greater than the amount provided under [AFDC] are null and void." (See Stats. 1992, ch. 721.)  ▮ Plaintiffs argue that this nullification provision violates the contract clauses of the California and United States Constitutions by depriving them of their contractual right to have general assistance grant levels set according to the

---

[6]The court did not rule on plaintiffs' contention that AB No. 2883 violated the separation of powers clause of the California Constitution.

formula established in the Consent Decree.[7] For the reasons discussed below, we cannot agree.[8]

This case is governed by the principles announced in *System Federation* v. *Wright* (1961) 364 U.S. 642 [5 L.Ed.2d 349, 81 S.Ct. 368]. In that case, 28 nonunion employees of a railroad filed an action seeking to enjoin the railroad and a number of its unions from discriminating against nonunion employees. (*Id.* at p. 643 [5 L.Ed.2d at p. 351].) In 1945, the year the action was filed, the federal Railway Labor Act prohibited railroads from maintaining union shops. (*Ibid.*) Eventually, the parties reached a settlement agreement under which the 28 plaintiffs (each of whom had claimed $5,000 in damages) released the railroad and its unions "from all claims or actions then accrued 'in consideration of the sum of $5000.00 this day paid to the undersigned . . . and the consent of said defendants to the entry of a decree in said action . . . .' " (*Id.* at p. 644 [5 L.Ed.2d at p. 351], fn. omitted.) The decree, which the district court subsequently adopted, enjoined the railroad and its unions from discriminating against nonunion employees. (*Id.* at p. 644 [5 L.Ed.2d at pp. 351-352].)

In 1951, several years after the district court adopted the consent decree, Congress amended the Railway Labor Act to make union shops permissible under certain circumstances. (*System Federation* v. *Wright, supra*, 364 U.S. at p. 644 [5 L.Ed.2d at pp. 351-352].) Following this amendment, the unions moved to modify the consent decree to permit union shops insofar as they were permitted under the amended statute. (*Id.* at pp. 644-645 [5 L.Ed.2d at pp. 351-352].) The district court refused to modify the consent decree, reasoning as follows: " 'The 1951 amendment to the Act did no more than make negotiations for a union shop permissive, [Citation]. The amendment did not nullify the agreement or the injunction. It did not prohibit an agreement between the railroad and the unions that a union shop should not exist. Hence, the Court leaves the parties as they agreed to be and to remain.' " (*Id.* at p. 646 [5 L.Ed.2d at p. 352].) The federal court of appeals affirmed the district court's decision not to modify the consent decree. (*Ibid.*)

The United States Supreme Court reversed. The court began its analysis by noting that ". . . a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or

---

[7]The contract clause of the California Constitution is found in article I, section 9, which states that "[a] . . . law impairing the obligation of contracts may not be passed." The contract clause of the United States Constitution is found in article I, section 10, clause 1, which provides that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts . . . ."

[8]We note that the Second District, Division Seven, recently reached the same conclusion in *Mendly* v. *County of Los Angeles* (1994) 23 Cal.App.4th 1193 [28 Cal.Rptr.2d 822].

fact, obtaining at the time of its issuance have changed, or new ones have since arisen." (*System Federation* v. *Wright, supra*, 364 U.S. at p. 647 [5 L.Ed.2d at p. 352].) The court observed that ". . . discretion is never without limits and these limits are often far clearer to the reviewing court when the new circumstances involve a change in law rather than facts." (*Id.* at p. 648 [5 L.Ed.2d at p. 353].)

The court then turned to the district court's exercise of discretion in the case at hand: "Had the 1945 decree simply represented relief awarded by the District Court after a trial of the action . . . there could be little doubt but that, faced with the 1951 amendment to the Railway Labor Act, it would have been improvident for the court to continue in effect this provision of the injunction prohibiting a union shop agreement as being unlawful *per se*, or its use as an instrument to effectuate other statutorily forbidden discriminations. That provision was well enough under the earlier Railway Labor Act, but to continue it after the 1951 amendment would be to render protection in no way authorized by the needs of safeguarding statutory rights at the expense of a privilege denied and deniable to no other union." (*System Federation* v. *Wright, supra*, 364 U.S. at p. 648 [5 L.Ed.2d at p. 354].) The court refused to apply a different rule simply because the parties had consented to the entry of the decree. " 'The consent is to be read as directed toward events as they then were. It was not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be.' " (*Id.* at p. 651 [5 L.Ed.2d at p. 355].) The court concluded that the district court had abused its discretion when it refused to grant the requested modification because "[t]he parties have no power to require of the court continuing enforcement of rights the statute no longer gives." (*Id.* at p. 652 [5 L.Ed.2d at p. 355].)

Plaintiffs attempt to distinguish *System Federation* on the grounds that it did not address a contract clause claim.[9] ■ Plaintiffs are correct that federal legislation is reviewed under "the less searching standards imposed on economic legislation by the Due Process Clauses" rather than under "the limitations imposed *on States* by the Contract Clause." (*Pension Benefit Guaranty Corp.* v. *R.A. Gray & Co.* (1984) 467 U.S. 717, 733 [81 L.Ed.2d 601, 613-614, 104 S.Ct. 2709], italics added.) Nonetheless, while *System Federation* does not specifically address a contract clause claim, it does offer several general principles which are useful in evaluating such claims: "The

---

[9] Plaintiffs also attempt to distinguish *System Federation* on the grounds that it involved a motion to modify a consent decree, not a motion to enforce a consent decree. The trial court also attached significance to the fact that the County had failed to bring a motion to modify the Consent Decree. This is a distinction without substance. Given that AB No. 2883 declared the disputed portion of the Consent Decree to be null and void, there was no need for the County to move for its modification.

parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction. In a case like this the District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce. Frequently of course the terms arrived at by the parties are accepted without change by the adopting court. But just as the adopting court is free to reject agreed-upon terms as not in furtherance of statutory objectives, so must it be free to modify the terms of a consent decree when a change in law brings those terms in conflict with statutory objectives. In short, it was the Railway Labor Act, and only incidentally the parties, that the District Court served in entering the consent decree now before us. The court must be free to continue to further the objectives of that Act when its provisions are amended." (*System Federation* v. *Wright, supra,* 364 U.S. at p. 651 [5 L.Ed.2d at p. 355].)

■ These general principles easily translate to the contract clause context. The contract clauses of the state and federal Constitutions protect only *vested contractual rights.* (*Legislature* v. *Eu* (1991) 54 Cal.3d 492, 528, 534 [286 Cal.Rptr. 283, 816 P.2d 1309].) Contrary to plaintiffs' assertion, a consent decree mandating future compliance with a statutory obligation does not invest the parties thereto with a contractual right to demand continued performance in the event that the underlying statutory obligation is changed. (Cf. *White* v. *Davis* (1975) 13 Cal.3d 757, 773, fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222] [" 'Relief by injunction operates in futuro, and the right to it must be determined as of the date of decision by an appellate court.' [Citations.]"]; *Sontag Chain Stores Co.* v. *Superior Court* (1941) 18 Cal.2d 92, 94 [113 P.2d 689] ["[D]ecree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference."].)[10]

Turning to the facts of this case, it is readily apparent that the Consent Decree does not give plaintiffs a vested contractual right to have their future grant levels set according to the formula specified in the decree irrespective of any changes to the underlying general assistance statute. To the contrary,

[10]*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1], relied on by plaintiffs, is not to the contrary. In *Sonoma County*, the Legislature passed a statute declaring "null and void any agreement by a local agency to pay a cost-of-living increase in excess of that granted to state employees." (*Id.* at p. 302.) The California Supreme Court held that the statute impaired the contractual rights of labor organizations that had already contracted with local agencies for higher cost-of-living increases. (*Id.* at pp. 303-305.) Unlike the present case, *Sonoma County* did not involve a consent decree or other type of contract that was designed to enforce a statutory obligation. Accordingly, the court in *Sonoma County* had no occasion to address the dispositive issue here—namely, whether parties to a statutorily based consent decree enjoy a vested contractual right to continued performance after the underlying statutory obligation has been changed.

the very reason that the Consent Decree was entered was to ensure that the County would comply with its statutory obligation in the future. The parties agreed to the terms of the Consent Decree only after the trial court had rendered a judgment in which it found that the County had failed to fulfill its then existing statutory obligation under section 17000 to provide for the "minimum subsistence needs" of general assistance recipients. (See, e.g., *Boehm* v. *Superior Court, supra,* 178 Cal.App.3d at p. 501.)

Plaintiffs argue that the Consent Decree cannot be considered injunctive in nature because the County agreed to the decree " 'to *avoid* imposition of an injunction requiring it to comply with the law.' "[11] We cannot agree with plaintiffs' characterization of the Consent Decree. Not only would an agreement not to comply with the law have been invalid,[12] but it is also clear that that is not what the parties intended. As indicated by its title—"Consent to Manner of Satisfaction of Judgment"—the postjudgment Consent Decree is nothing more than an agreement as to the *manner* in which the County would discharge its statutory obligation in the future. Nothing in the Consent Decree purports to give plaintiffs a vested contractual right to continue to have their general assistance grant levels set according to the formula specified in the decree in the event the underlying statutory obligation to provide for the "minimum subsistence needs" of general assistance recipients is changed, as happened here.[13] Since no vested contractual rights are involved, the contract clause protections of the state and federal Constitutions are simply not implicated. (See *Legislature* v. *Eu, supra,* 54 Cal.3d at pp. 528, 534.)[14]

---

[11]See *Mendly* v. *County of Los Angeles, supra,* 23 Cal.App.4th at page 1237 (dis. opn. of Johnson, J.).

[12]See *Mendly* v. *County of Los Angeles, supra,* 23 Cal.App.4th at page 1210 (maj. opn. of Lillie, P. J.).

[13]Plaintiffs argue that they gave consideration in the form of "a significant reduction in retroactive benefits" in exchange for a guaranteed "future grant amount formula," suggesting that this consideration somehow gave them a vested right to have their future grant levels set according to the formula ad infinitum. Not so. The consideration for the reduction in retroactive benefits was *not* a guaranteed future grant amount formula. Rather, the County agreed that "[i]n exchange for a reduced distribution, the County will assert no lien under [section] 17109 nor work for relief requirement under [section] 17200 for sums distributed, nor will it seize any such payment to reimburse itself for other preexisting debts." Indeed, the retroactive benefits portion of the Consent Decree and the future grant amount portion of the Consent Decree are so distinct that they were negotiated in separate agreements, reached on different dates. (See *ante,* p. 418.) In any event, as noted above, "parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction. . . . The court must be free to continue to further the objectives of [the underlying statute] when its provisions are amended." (*System Federation* v. *Wright, supra,* 364 U.S. at p. 651 [5 L.Ed.2d at p. 355].)

[14]Having concluded that AB No. 2883 does not impair vested contractual rights, we have no occasion to consider whether the County has advanced a sufficient justification for the

Like the plaintiffs in *System Federation*, plaintiffs here have "no power to require of the court continuing enforcement of rights the statute no longer gives." (*System Federation* v. *Wright, supra,* 364 U.S. at p. 652 [5 L.Ed.2d at p. 355].) Specifically, they have no right to seek enforcement of a Consent Decree provision designed to enforce the County's statutory obligation to provide for the "minimum subsistence needs" of general assistance recipients, a·statutory obligation that has been changed. Under these circumstances, the trial court should have denied plaintiffs' motion to enforce the Consent Decree.[15]

## III.  DISPOSITION

The trial court's order granting plaintiffs' motion to enforce the Consent Decree is reversed. The parties shall bear their own costs on appeal.

Newsom, Acting P. J., and Stein, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 28, 1994. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

legislation. (See, e.g., *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at pp. 305-314.)

[15]Plaintiffs also argue that AB No. 2883 violates the separation of powers clause of the California Constitution. (Cal. Const., art. III, § 3 ["The powers of State government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."].) This argument hinges on plaintiffs' assumption that the Consent Decree gave them a "vested right[ ] . . . to a future payment stream calculated down to the penny." For the reasons already discussed (see *ante,* pp. 423-424), this critical assumption is mistaken, and, therefore, plaintiffs' separation of powers argument fails.