[No. F003195. Fifth Dist. Jan. 7, 1985.]

IRENE BOEHM et al., Plaintiffs and Appellants, v.
COUNTY OF MERCED et al., Defendants and Respondents.

## COUNSEL

Richard A. Rothschild, Melinda R. Bird, Paul Babwin, Chris Marie Brown and Eugenie Denise Mitchell for Plaintiffs and Appellants.

Margo Anne Feinberg as Amicus Curiae on behalf of Plaintiffs and Appellants.

William E. Gnass, County Counsel, and Angil P. Morris, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**HAMLIN, J.**—Plaintiffs appeal from a Merced County Superior Court judgment denying injunctive relief from a reduction in Merced County's general assistance grant levels for its indigent residents.

The principal issue on appeal is whether defendants acted arbitrarily and capriciously in reducing Merced County's general assistance grant levels without a factual determination of the minimum subsistence needs of its residents. We will conclude that defendants' action was arbitrary and reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 1983, the Merced County Board of Supervisors (the board) reduced county general assistance grant levels for indigent county residents from $198 per month per individual, a level which had not been increased since 1981, to $175 per month, with proportional reductions for larger family sizes. This 12 percent reduction became effective July 1, 1983.

On June 23, 1983, plaintiffs, who are indigent residents of Merced County and recipients of general assistance, filed this action for injunctive and declaratory relief. The trial court denied plaintiffs' request for a temporary restraining order and issued an order to show cause re preliminary injunction.

Following the order to show cause hearing, the trial court issued an order denying a preliminary injunction. This order did not include a statement of the trial court's reasons for the denial.

At the hearing on the order to show cause the trial court had before it the following: (1) the deposition of the chairman of the board; (2) the deposition of Merced County's principal administrative analyst; (3) copies of documents submitted by the Merced County Department of Human Resources in support of its general assistance reduction recommendation; (4) the declaration of Dean Richmond, the Director of the Merced County Department of Human Resources; (5) the declaration of the board chairman; and (6) the declaration of Grover Omyer, deputy director of Merced County Department of Human Resources. None of these documents included a minimum subsistence needs study.

Although Grover Omyer's declaration stated that a minimum subsistence needs study was made and other declarations referred to such a study, none stated that such a needs study was submitted to the board in support of the recommended reduction in general assistance levels. The board had before it at the time it approved the reduction of general assistance levels Merced County's principal administrative analyst's recommendation that the department of human resources "be directed to complete a survey to determine subsistence requirements and reasonable duration of unemployment period for employable persons prior to any adjustment of grant levels." Nevertheless, the board proceeded to approve the general assistance reductions based on a survey comparing the general assistance standards of other San Joaquin Valley counties. The board was informed only that a study had been made, the general assistance caseload had been increased and there was a need for budget cuts.

The trial court noted the absence of any study of the needs of Merced County's general assistance recipients before the board other than the comparison survey, which the trial judge characterized as not a study because it failed to analyze the situation in Merced County. The court then concluded that the information on which the board acted was barely sufficient to satisfy the requirements of Welfare and Institutions Code sections 17000 and 17001.[1]

Plaintiffs appealed from the court's order denying their request for a preliminary injunction against the general assistance grant reduction. That order did not mention defendants' procedure for terminating general assist-

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

ance payments despite plaintiffs' challenge of the procedure as violative of due process. Plaintiffs on appeal urge that the trial court erred in rejecting their due process argument.

### DISCUSSION

I. *Did the Board Act Arbitrarily or Capriciously in Reducing Merced County's General Assistance Grant Levels Without Making a Factual Determination of Minimum Subsistence Needs Within the County?*

To determine whether the board acted arbitrarily or capriciously in reducing the general assistance level in Merced County, we must consider the board's statutory duty.

Section 17000 provides in relevant part that "Every county . . . *shall* relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." (Italics added.) ■ This section imposes upon Merced County "a mandatory duty to relieve and support its indigents, and the excuse that it cannot afford to do so is unavailing." (*City and County of San Francisco v. Superior Court* (1976) 57 Cal.App.3d 44, 47 [128 Cal.Rptr. 712]. See also *Mooney v. Pickett* (1971) 4 Cal.3d 669, 676, fn. 7 [94 Cal.Rptr. 279, 483 P.2d 1231] [the use of "shall" in § 17000 means, pursuant to § 15, a mandatory duty].)

■ Similarly, section 17001 imposes a mandatory duty on the board of supervisors of each county to adopt standards of aid and care for the indigent and dependent poor. (*City and County of San Francisco v. Superior Court, supra,* 57 Cal.App.3d at p. 47.) However, despite the existence of these broad mandatory duties the county supervisors have discretion to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief. (See *County of L. A. v. Dept. of Social Welfare* (1953) 41 Cal.2d 455, 458 [260 P.2d 41]; *Berkeley v. Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961 [115 Cal.Rptr. 540].) The courts have no authority to interfere " 'in the absence of a clear showing of fraud or arbitrary or capricious conduct. . . .' " (*Adkins v. Leach* (1971) 17 Cal.App.3d 771, 778-779 [95 Cal.Rptr. 61].) Nonetheless, the board's discretion can be exercised only within fixed boundaries and consistent with the underlying purpose of the statutes which impose the duty. (See *Mooney v. Pickett, supra,* 4 Cal.3d at p. 679.)

Sections 17000 and 17001 should be interpreted along with section 11000: "The provisions of law relating to a public assistance program shall be

fairly and equitably construed to effect the stated objects and purposes of the program."

■ Under the authorities reviewed, our primary concern in this case is whether the board acted arbitrarily in reducing the general assistance payments without having made a factual determination of the minimum subsistence needs of its indigent residents.

In *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d 44, the court held that a county must make a determination of facts necessary to establish subsistence standards within the county. We believe this determination of facts necessarily includes the minimum subsistence needs of the county's indigent residents to satisfy the statutory mandate that the county relieve and support its indigents.

Defendants do not argue that the board did not have the duty to determine minimum subsistence needs of its indigents. Rather, defendants contend the board fulfilled its duty by delegating responsibility to the department of human resources to make the required determination and to recommend revised subsistence standards based on that determination.

We recognize that practical considerations dictate delegation of the responsibility for making a factual survey or study. However, section 17001 requires that the board adopt the standards of aid and care, and *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d 44, requires the board to make a determination of facts necessary to establish subsistence standards. The board cannot fulfill its duties simply by adopting standards the department of human resources recommends based on a study or survey which is not submitted to the board either in writing or by oral reports describing precisely what was surveyed or studied, the nature and scope of the study or survey and its results. Absent such information there is nothing in the record to establish a basis for a factual determination.

In this case it is undisputed that a written factual study of subsistence needs of Merced County's indigents was not submitted to the board. Moreover, a review of the transcript of the board meeting at which the reduced standards were adopted reveals no oral report of such a study other than that a study was made. The declarations and other evidence before the trial court do not establish that a subsistence needs study was described to the board. Thus, the survey comparing general assistance levels in the San Joaquin Valley counties was the only factual material before the board at the time it adopted the reduced subsistence standards. Although there may be rough similarities in living costs between different rural counties in a general geographical area, there was no evidence that grant levels in other counties

were adequate. That general assistance recipients in a few San Joaquin Valley counties may subsist at inhuman levels does not lend support to defendants' decision. Such a comparative survey cannot provide a basis for a factual determination of the subsistence needs of Merced County's indigents. Since that survey provided the only facts on which subsistence needs could have been factually determined, the board's reduction in general assistance payments was arbitrary and capricious.

Defendants contend the reduction in general assistance levels was "fat trimming." The board could not have determined whether it was "fat trimming" or a "chiseling of the indigents' bones" without having presented to it a study of minimum subsistence needs of Merced County indigents.

## II. *Is Denial of Due Process an Issue on Appeal?*

Defendants urge that plaintiffs cannot challenge the termination of general assistance to those who fail to ask for a hearing within two days of their notice of termination because this issue is not specified in the notice of appeal. Plaintiffs counter that: (1) notices of appeal are liberally construed, (2) defendants have not been misled or prejudiced, (3) the notice (due process) argument is entwined with the general-assistance-reduction argument, and (4) the lower court's order denying preliminary injunction only mentioned the general assistance reduction.

California Rules of Court, rule 1(a), states in pertinent part: "A notice of appeal shall be liberally construed in favor of its sufficiency." ▮ Technical objections to appellate presentations are not favored. (*Sharick* v. *Galloway* (1936) 12 Cal.App.2d 733 [55 P.2d 1196]. See also *Jaques* v. *Board of Supervisors* (1913) 22 Cal.App. 627 [135 P. 686]; *Jarkieh* v. *Badagliacco* (1945) 68 Cal.App.2d 426 [156 P.2d 969].) The Supreme Court stated in *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289]: "[I]t is and has been the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced."

Defendants have not been prejudiced or misled by plaintiffs' notice of appeal. The due process argument was raised in plaintiffs' complaint and discussed below by both parties in their memoranda of points and authorities and in oral argument. Further, defendants requested and were granted two time extensions in order to file their appellate brief. (See *Girard* v. *Monrovia City School Dist.* (1953) 121 Cal.App.2d 737, 740 [264 P.2d 115] [an extension in time to file a brief is a factor in determining whether one was misled or prejudiced].)

Upon review of the record and the court's order denying the preliminary injunction, we are convinced the due process argument was entwined with the general-assistance-reduction argument. Both of these arguments supported plaintiffs' request for a preliminary injunction.

The trial court's order denying preliminary injunction speaks to the rate reduction without discussing the due process argument even though it was clearly before the court. It would be unfair to compel plaintiffs to be more specific in its notice of appeal than the trial court was in its order. The only other equitable alternative would be to dismiss this appeal and instruct the lower court to amend its judgment. " 'That would then require the parties to rebrief the question . . . in the briefs now on file. This seems to be an unnecessarily dilatory and circuitous method of reaching a proper result. . . .' " (*Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 154 [133 Cal.Rptr. 10, 554 P.2d 330], citing *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 524 [322 P.2d 933].) Therefore, we will decide the due process issue.

III. *Did the County's Procedure for Terminating General Assistance Violate Due Process?*

 Plaintiffs submit that terminating general assistance to recipients who fail to request a hearing within two days of the receipt of their termination notices violates due process under the California and United States Constitutions. Defendants counter with a substantial-evidence-law exposition and their insufficient-notice-of-appeal argument. However, defendants do not address plaintiffs' two-day-notice challenge.

A person may not be deprived of life, liberty, or property without due process of law. (Cal. Const., art. I, § 7; U.S. Const. 14th Amend.) Courts have construed due process to prohibit government from terminating aid without providing notice and a reasonable pretermination opportunity to contest the determination. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011] [a case involving aid to families with dependent children as well as New York's program equivalent to general assistance]; *Griffeth* v. *Detrich* (9th Cir. 1979) 603 F.2d 118 [California general assistance applicants and recipients alike have a property interest in entitlement to benefits which may not be denied without a hearing].)

As a corollary, in *Goldberg* v. *Kelly, supra,* 397 U.S. at page 264 [25 L.Ed.2d at page 297], when an appeal hearing is scheduled after the termination date, as it was in our case, recipients must be paid pending the hearing. Otherwise, an eligibility controversy *"may deprive an eligible recipient of the very means by which to live while he waits.* Since he lacks independent resources, his situation becomes immediately desperate. His

need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." (*Ibid.,* italics added.) Moreover, providing aid pending the appeal fosters recipients' well-being and "guards against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity." (*Id.,* at p. 265 [25 L.Ed.2d at p. 297].)

When the present suit was filed, Merced County did not provide aid to general assistance recipients whose appeal hearings were scheduled after their general assistance termination date. Later, this policy was changed to provide aid but only "if the recipient requests such hearing within two (2) days of the date of notice of proposed action."[2] ■ We hold that the Fourteenth Amendment's procedural due process requirements apply to Merced County's proceedings in which general assistance is provided pending a termination hearing. (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 265 [25 L.Ed.2d at p. 297] and *Griffeth* v. *Detrich, supra,* 603 F.2d 118.)

■ We now must decide whether Merced's two-day limitation on filing a request for a hearing complies with due process.

In *Lugo* v. *Dumpson* (S.D.N.Y. 1975) 390 F.Supp. 379, a regulation suspending welfare grants pending a hearing unless recipients sought a hearing within *five* days after mailing of the notice of termination was struck down. The court found this to be an obvious and patently unconstitutional denial of procedural due process. (*Id.,* at p. 382.)[3]

The court in *Lugo* v. *Dumpson, supra,* 390 F.Supp. 379, discussed the statement in *Goldberg* v. *Kelly, supra,* 397 U.S. at page 268 [25 L.Ed.2d at page 299], that "We are not prepared to say that the seven-day notice currently provided by New York City is constitutionally insufficient *per se,* although there may be cases where fairness would require that a longer time be given." *Lugo* noted that "[w]hile seven days may be a borderline situation, *five days is clearly insufficient." (Lugo* v. *Dumpson, supra,* 390 F.Supp. at p. 383, italics added.)

In *Ortiz* v. *Woods* (1982) 129 Cal.App.3d 672 [181 Cal.Rptr. 209], the court struck down a social service regulation requiring a claimant who receives notice of a reduction or discontinuance of aid to file a hearing request

---

[2] This policy reversal was likely prompted by plaintiffs' suit.

[3] The regulation in *Lugo* v. *Dumpson, supra,* 390 F.Supp. 379 required notice within five days of the *mailing* of the notice, whereas Merced County requires notice within two days of *receiving* the notice. Nevertheless, *Lugo* v. *Dumpson, supra,* is persuasive in pointing out that "such a period of time is wholly inadequate to provide even the most minimal constitutional protection." (*Id.,* at p. 382.)

within "*10 days* from the date that notice was mailed" in order to continue to receive full assistance pending a final decision. This policy served "to reduce the number of instances where a hearing would be afforded to welfare recipients prior to effecting the intended change." (*Id.*, at pp. 678-679.) The court struck down the regulation because it required a hearing request before the effective date of the contemplated action in order to insure aid pending the appeal. (*Id.*, at pp. 679-680. See also *Almeida* v. *Chang* (D. Hawaii 1977) 434 F.Supp. 1177, 1179 [a timely notice period for welfare recipients, pursuant to 45 C.F.R. § 205.10(a)(4) (1976) must extend for at least 10 days].)

If a five-day notice is insufficient (*Lugo* v. *Dumpson, supra*), a seven-day notice is borderline (*Goldberg* v. *Kelly, supra,* 397 U.S. 254), and a ten-day notice is insufficient (*Ortiz* v. *Woods, supra*) or barely sufficient (*Almeida* v. *Chang, supra*), then it is clear that Merced's two-day notice is invalid, and we so hold. (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.)[4]

The judgment denying injunctive relief is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Appellants are entitled to recover their costs on appeal.

Franson, Acting P. J., and Hardin, J.,* concurred.

---

[4]Many people may not even read their mail within two days of receipt, while others may not understand the notice without the aid of outside advice. (See *Lugo* v. *Dumpson, supra,* 390 F.Supp. 379.) Finding legal assistance within two days may be quite difficult, particularly for some general assistance recipients who cannot afford transportation and must rely on friends.

*Assigned by the Chairperson of the Judicial Council.