[No. A048613. First Dist., Div. Two. Jan. 31, 1991.]

LEDORA WHITFIELD et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF ALAMEDA COUNTY et al.,
Defendants and Respondents.

COUNSEL

Charles R. Garry and Lynn S. Carman for Plaintiffs and Appellants.

Kelvin H. Booty, Jr., County Counsel, and William E. Rundstrom, Assistant County Counsel, for Defendants and Respondents.

OPINION

BENSON, J.—Ten homeless general assistance recipients appeal from the trial court's denial of their petition for writ of mandate. Appellants challenge the adequacy of Alameda County's general assistance grant level. Specifically, they ask that the county be ordered to conduct a factual study of the cost of subsistence for Alameda County indigents and to enact a new general assistance ordinance based on that study. The issue on appeal is whether the county satisfied its mandatory duty under the Welfare and Institutions Code to determine and adopt an appropriate standard of aid and care for its indigent population. We hold that it did not and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. In 1978 Alameda County's general assistance (GA) grant was $132 per month. That year GA recipients sued

the county in a class action to raise the GA grant (Thames v. Alameda County, Super. Ct. Alameda County, No. 514682-0).

After the lawsuit was filed, Alameda County conducted a study of subsistence costs of GA recipients in the county (the 1979 GA study). The study, submitted to the respondent Alameda County Board of Supervisors (Board), calculated costs of housing, food, clothing, transportation, and certain personal items. It determined the total need level to be $159 per month. Based on the study, the Board enacted an ordinance setting the basic GA grant at $160 per month. The Board later raised the grant to $170.

In December 1980 the county conducted another GA costs study (the 1980 GA study). Using essentially the same methodology as the 1979 study it concluded the cost of subsistence for Alameda County GA recipients had risen $37 during 1980, to $207 per month. Based on that study, the Alameda County Social Services Agency (SSA) recommended the GA grant be raised accordingly. Conceding the 1980 study appeared accurate and complete, the county administrator nevertheless recommended that the Board delay deciding on the increase. He noted the strain the increased grant would impose on the county's finances and the risk that such an increase might encourage indigents to move to Alameda County from counties with lower grant levels.

In May 1981 the SSA withdrew its study-based recommendation of a $37 increase, in favor of an $18 monthly increase to $188 per month. This increase was based on the newly formulated California Necessities Index (CNI), which the state uses to grant cost of living increases in the Aid to Families With Dependent Children (AFDC) and Supplemental Social Security Income programs. As described by the SSA in its recommendation to the Board, "[t]he State's method establishes a flat grant based upon an overall cost-of-living factor [the CNI], rather than using an established need amount for each individual cost component (i.e., food, housing, clothing, transportation and personal items)." In June 1981 the Board acted on the SSA's revised recommendation and established a new grant level of $188 per month.

Based on the county's increases in the GA grant level, the plaintiffs in the Thames class action obtained court approval to voluntarily dismiss the action without prejudice.

Following the GA grant increase to $188 per month, the county failed to increase the grant in 1982, increased it to $200 per month in January 1983 (presumably based on the CNI), failed to increase the grant in 1984, and

increased the GA grant to $211 per month in January 1985 based on the CNI.

In September 1985 the Legal Aid Society of Alameda County informed the SSA that the existing $211 grant level was inadequate, based on the lack of annual increases and on alleged methodological flaws in the 1979 GA study. Legal Aid offered to negotiate with the county to avoid litigation. Extensive negotiations followed. The Board met in closed session three times to consider offers and counteroffers.

In February 1986 the county offered to raise its GA grant level to the state's AFDC level over one and one-half years. Effective July 1, 1986, the $211 grant would increase to $273 per month, reflecting all CNI increases since January 1, 1980. The AFDC grant at that time was $289. The next year the GA grant would match AFDC, less $1. Thereafter, each July 1 the GA grant would be raised by the CNI and kept $1 less than the AFDC grant. Legal Aid accepted the county's offer.

On April 29, 1986, the Board adopted ordinance No. 0-86-66 (the subject of the present litigation) which implemented the county's agreement with Legal Aid. As agreed, beginning in 1987 the GA grant has been set at $1 less than the state AFDC grant as adjusted by the CNI. When the present action was filed on November 9, 1989, Alameda County's monthly GA grant was $340 per month.

Appellants' petition for writ of mandate in the superior court challenged ordinance No. 0-86-66 as being void on the grounds that: (1) it is not based on any factual study of actual subsistence costs in Alameda County; (2) it fails to set standards for general assistance aid and care as required by statute; (3) the use of the AFDC grant as adjusted by the CNI is arbitrary and capricious since neither is based on local subsistence costs; and (4) the 1979 GA study is itself methodologically flawed. Appellants sought, among other things, an order compelling the county to conduct a factual study of minimum subsistence costs for Alameda County indigents and then to establish new GA grant standards based on that study. Appellants also sought attorneys' fees under Code of Civil Procedure section 1021.5.[1]

By order dated November 28, 1989, the trial court denied appellants' petition for writ of mandamus. ██ Appellants' timely notice of appeal followed.[2]

---

[1] In the trial court appellants also argued the county should be required to enact a special needs supplement to assist GA recipients in light of the October 17, 1989 earthquake. The issue is, however, abandoned on appeal.

[2] "A trial court order denying a writ of mandamus is appealable." (*Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190-191 [205 Cal.Rptr. 433].)

DISCUSSION

■ County general assistance "is a program of last resort for indigent and disabled persons unable to qualify for other kinds of public benefits." (*Boehm* v. *Superior Court* (1986) 178 Cal.App.3d 494, 499 [223 Cal.Rptr. 716] (*Boehm II*).) "The program is unique because the responsibility for funding and administering it rests entirely upon individual county governments." (*Ibid.*)

The statutory basis for this responsibility is found in Welfare and Institutions Code section 17000.[3] It provides in relevant part that "Every county . . . shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." Section 17000 imposes on Alameda County "a mandatory duty to relieve and support its indigents, and the excuse that it cannot afford to do so is unavailing." (*City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 47 [128 Cal.Rptr. 712]; *Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 676, fn. 7 [94 Cal.Rptr. 279, 483 P.2d 1231]; *Guidotti* v. *County of Yolo* (1989) 214 Cal.App.3d 1552, 1561 [271 Cal.Rptr. 858]; *Poverty Resistance Center* v. *Hart* (1989) 213 Cal.App.3d 295, 303 [261 Cal.Rptr. 545].)

Section 17001 imposes a further mandatory duty on the board of supervisors of each county to adopt " 'standards of aid and care' " for the indigent and dependent poor. (*Poverty Resistance Center* v. *Hart, supra,* 213 Cal.App.3d at p. 304; *Boehm* v. *County of Merced* (1985) 163 Cal.App.3d 447, 451 [209 Cal.Rptr. 530] (*Boehm I*); *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal. App.3d at p. 47.) "Such standards are in the nature of an administrative regulation." (*Poverty Resistance Center, supra,* at p. 304; *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 679.) These standards are expressed in county ordinances stating the general assistance grant levels for qualifying citizens.

■ "Under section 17001 counties have 'broad discretion to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief.' " (*Clay* v. *Tryk* (1986) 177 Cal.App.3d 119, 124 [222 Cal.Rptr. 729], [fn. omitted], quoting *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d at p. 49.) However, there are clear-cut limits to this latitude in administering relief. The counties' discretion " ' "can be exercised only within fixed boundaries. In administering General

---

[3] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

Assistance relief the county acts as an agent of the state. [Citation.] . . . . [T]he agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. [Gov. Code, § 11374.]" ' " (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 211 [211 Cal.Rptr. 398, 695 P.2d 695], quoting *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 679; *Guidotti* v. *County of Yolo, supra,* 214 Cal.App.3d at p. 1562.)

Section 10000 states that the statutory purpose and legislative intent of the provisions governing general assistance are "to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely . . . and that aid shall be so administered and services so provided, to the extent not in conflict with federal law, as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society." Sections 10000, 17000, and 17001 are also to be construed with section 11000, which provides, " 'The provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program.' " (See *Boehm I, supra,* 163 Cal.App.3d at pp. 451-452; *Boehm II, supra,* 178 Cal.App.3d at p. 500.)

■ Where, as here, the general assistance level is challenged as insufficient, "the standard must be justified by an identified factual predicate concerning the *actual* cost of subsistence within the county. [Citations.]" (*Poverty Resistance Center* v. *Hart, supra,* 213 Cal.App.3d at p. 304 (italics in original); *Boehm I, supra,* 163 Cal.App.3d at p. 452 [in adopting a general assistance grant level "a county must make a determination of facts necessary to establish subsistence standards within the county."].) The county must make such a factual determination of the minimum subsistence needs of its poor to satisfy section 17000's mandate that it " 'relieve and support' " those residents. (See *Poverty Resistance Center, supra,* at p. 304.) " 'Minimum subsistence, at the least, must include allocations for housing, food, utilities, clothing, transportation and medical care.' " (*Ibid.,* quoting *Boehm II, supra,* 178 Cal.App.3d at p. 501.)

A board of supervisors' establishment of general assistance grant levels must therefore be based on a factual study of actual subsistence costs in the county. For example, in *Boehm I, supra,* Merced County reduced its general assistance grant level from $198 to $175 per month. (*Boehm I, supra,* 163 Cal.App.3d at p. 449.) However, the board of supervisors reduced the grant without reviewing a factual study of the needs of the county's poor. (*Id.* at p. 450.) The only information before the board when it reduced the benefits

was a survey comparing Merced County's general assistance standard to those of neighboring San Joaquin Valley counties. (*Id.* at p. 452.) The court held the county failed to meet its statutory duty and acted arbitrarily and capriciously by reducing assistance levels without considering a study of actual subsistence costs in the county. (*Id.* at pp. 451-453.) "The board could not have determined whether it was 'fat trimming' or a 'chiseling of the indigents' bones' without having presented to it a study of minimum subsistence needs of Merced County indigents." (*Id.* at p. 453.)

Following the remand in *Boehm I*, Merced County conducted two studies of subsistence costs in the county. The studies, however, concerned only housing (including utilities) and food costs. Based on the studies, the county raised its GA grant $10 per month. (*Boehm II, supra*, 178 Cal.App.3d at p. 497.) Indigent residents again brought suit. The Court of Appeal held the county had arbitrarily and capriciously fixed the level of assistance without considering costs of clothing, transportation, and medical care. It ordered the county to conduct a complete study of its indigents' needs and to provide appropriate levels of relief based on that study. (*Id.* at pp. 501, 503-504.)

The courts' role in reviewing a county's determination of general assistance levels has been the subject of discussion by commentators. (See Coates, *Legal Rights of Homeless Americans* (1990) 24 U.S.F. L.Rev. 297, 320-329; Bensinger, *From Public Charity to Social Justice: The Role of the Court in California's General Relief Program* (1988) 21 Loyola L.A. L.Rev. 497.) Generally, the "courts play an important role in assuring that public welfare laws are liberally interpreted and actively enforced." (*Boehm II, supra*, 178 Cal.App.3d at p. 500, citing *County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 401 [179 Cal.Rptr. 214, 637 P.2d 681].) "We have no doubt that when statutes affecting the well-being—perhaps the very survival—of citizens of this state are being violated with impunity by the [county], an agent of the state, the courts, as final interpreters of the law, must intervene to enforce compliance." (*City and County of San Francisco* v. *Superior Court, supra*, 57 Cal.App.3d at p. 50, cited with approval in *Robbins* v. *Superior Court, supra*, 38 Cal.3d at p. 212.)

The precise scope of judicial review was recently addressed in *Poverty Resistance Center* v. *Hart, supra*, 213 Cal.App.3d 295.[4] In that case, the plaintiffs challenged the adequacy of the minimum subsistence cost studies

---

[4] Both *Poverty Resistance Center* and *Guidotti* v. *County of Yolo, supra*, 214 Cal.App.3d 1552 (discussed below), were initially granted review by the California Supreme Court. However, the court subsequently dismissed review and ordered both cases published. (*Poverty Resistance Center* v. *Hart* (July 11, 1990) S012238; *Guidotti* v. *County of Yolo* (Aug. 1, 1990) S012709.

used by Sacramento County to set its general assistance grant level. (*Id*. at p. 300.) On appeal, the court rejected the argument plaintiffs were entitled to an "independent adjudication of the cost of subsistence in Sacramento County." (*Id*. at 302.) The court also rejected the argument that it could not review the factual underpinnings of the board's action in setting relief levels. (*Id*. at p. 303.) Reviewing the board's action in light of the general assistance statutes, the court determined "(a) whether the Board considered the factors of subsistence mandated by section 17000, in adopting the standards pursuant to the mandate of section 17001, and (b) whether there is an evidentiary predicate for their action in setting the grant level." (*Id*. at p. 302.) The court held that a county must demonstrate reasonable support in the administrative record for the factual determinations used to set grant levels and that the board of supervisors has a duty to consider the actual studies. (*Id*. at pp. 304-305.) "This means that factual premises which underpin a standard adopted under section 17001 must be supported by evidence before the Board and by reasonable inferences drawn therefrom." (*Id*. at p. 305) "These assessments, with due deference to the Board, ultimately present questions of law for the court." (*Ibid*., citing *Mooney* v. *Pickett, supra*, 4 Cal.3d at p. 681.)

Applying these standards, the court then addressed each of the plaintiffs' attacks on the basis for the general assistance grant. For example, it found the housing allocation was not reasonably supported by the evidence before the board, that the information before the board permitted it to decline to provide funds for items such as laundry machines, barber services, telephones, and nonprescription drugs, and that the food allocation was based on the cost study's improper methodology and was not, therefore, supported by inferences reasonably drawn from the evidence before the board. (*Poverty Resistance Center* v. *Hart, supra*, 213 Cal.App.3d 295 at pp. 306-311; see also *Guidotti* v. *County of Yolo, supra*, 214 Cal.App.3d at pp. 1563-1566 [since the methodology of the county's housing study was flawed, the evidence before the board did not support its action in setting a grant level].)

■ With these considerations in mind, we turn to examine the basis for the Alameda County Board of Supervisors' present general assistance grant level. ■ Since the facts are undisputed and the assessment of whether the Board satisfied its statutory duties presents questions of law (*Poverty Resistance Center* v. *Hart, supra*, 213 Cal.App.3d at p. 305), we apply the standard of independent review. (See *Clay* v. *Tryk, supra*, 177 Cal.App.3d at pp. 123-124.)

Under ordinance No. 0-86-66, the county's GA grant level was initially based at least in part on the award recommended in the 1979 GA study.

However, since July 1, 1988 the grant has been based solely on the existing AFDC grant (as annually adjusted by the CNI), less $1. Thus, the grant level challenged by appellants is not based on facts contained in the 1979 or any other study of subsistence costs in Alameda County. Respondents apparently concede the AFDC grant level is not set by the state Legislature on the basis of a factual study of the county's subsistence costs. There is similarly no factual support for an inference that reducing the AFDC grant level by $1 makes the GA grant an accurate reflection of actual costs in Alameda County.

The county's desire to simplify the process of setting standards of aid and care by following the state's AFDC grant and to avoid litigation by negotiating with the local legal aid society to set new GA levels is understandable. However, by relying entirely on the AFDC figure the county impermissibly abdicated all responsibility for setting a standard of aid and care for its indigent and dependent poor, as mandated by section 17001. Setting a grant level which was not based on evidence of the actual cost of minimum subsistence in Alameda County, the Board thus acted arbitrarily and capriciously by enacting ordinance No. 0-86-66. (See *Guidotti* v. *County of Yolo, supra,* 214 Cal.App.3d at p. 1566; *Boehm I, supra,* 163 Cal.App.3d at p. 453; *Boehm II, supra,* 178 Cal.App.3d at p. 503.)

Respondents' major argument on appeal is that the ordinance is proper because the amount presently paid is more than what would be paid if the grant based on the 1979 GA study were increased annually by the CNI. The argument is not persuasive. The issue is not whether the present grant exceeds what would be paid based on an 11-year-old GA study multiplied by a statewide cost of living factor.[5] The issue is whether in enacting the ordinance the Board considered evidence of the current cost of minimum subsistence in the county. The undisputed evidence is that it did not.

Moreover, the 1979 GA study was itself methodologically flawed. Respondents do not dispute or even address the three flaws pointed out by appellants. First, the study's total monthly housing cost of $96.46 was based on an average of rents paid by 10 percent of GA recipients, including those who rented individual rooms and those who arranged other housing with relatives or friends. "Averaging is not in itself an unreliable basis for setting grant levels but the averaging must be fair and it must be reasonable." (*Guidotti* v. *County of Yolo,* 214 Cal.App.3d at p. 1565.) Here, however, the

---

[5] Since the county will be directed to complete and consider a new GA study and enact a new ordinance, we need not reach the issue of whether counties may appropriately rely on the CNI as a mechanism for determining future cost of living increases.

sample group consisted of both people paying market rates for individual rooms and those renting from relatives and friends, the latter group presumably paying lower rents. Rejecting a similar averaging, the court in *Guidotti, supra,* recognized that "[r]enting from a parent or spouse is not a market transaction and those persons do not belong in the same group with individuals who are paying market value rent." (*Id.* at p. 1565.) Such a method of determining housing cost is improper since unfairly weighted in favor of GA recipients who share shelter, to the disadvantage of those who cannot. (*Ibid.*)

Second, while the 1979 study concludes that a housing allowance of $96.46 per month was appropriate, it did not contain a vacancy study establishing that enough housing units in fact existed at that figure to house the county's GA recipients. This flaw in the housing calculations was also noted in *Guidotti v. County of Yolo, supra,* 214 Cal.App.3d at pages 1564-1566.

Third, the food component of the 1979 study is based on the cost to provide a nutritious diet based on the "thrifty food plan" developed by the United States Department of Agriculture (USDA). While the USDA's "thrifty food plan" is a reasonable starting point for determining the types of food to be surveyed, the price of those foods listed by the USDA is a national average. Since not a survey of the cost of buying food in Alameda County, the food allocation in the 1979 GA study is deficient. (Cf. *Poverty Resistance Center v. Hart, supra,* 213 Cal.App.3d at pp. 311-313 [county used market basket survey of food costs in six local chain supermarkets].) Given these significant flaws in the 1979 GA study, it therefore could not provide a reasonable factual basis for, or otherwise justify, the Board's enactment of ordinance No. 0-86-66.

DISPOSITION

The trial court's denial of appellants' petition for writ of mandamus is reversed. The superior court is accordingly ordered to vacate its order denying the petition and to issue a writ of mandamus directing respondents to: (1) initiate and complete without unnecessary delay a study of the actual minimum subsistence needs of Alameda County's indigent residents; and (2) enact a new ordinance establishing appropriate general assistance levels based on that study. On remand, the trial court is further directed to

determine the amount of appellants' reasonable attorneys' fees and to award those fees under Code of Civil Procedure section 1021.5.

Kline, P. J., and Smith, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 17, 1991.