[No. A056574. First Dist., Div. Two. Apr. 6, 1994.]

CHARLES BELL et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF ALAMEDA COUNTY et al., Defendants and Appellants.

BRENDA BURKS et al., Plaintiffs and Respondents, v.
HELEN KNUDSON, as Director, etc., et al., Defendants and Appellants.

RICHARD BEAL et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF ALAMEDA COUNTY et al., Defendants and Appellants.

## COUNSEL

Kelvin H. Booty, Jr., County Counsel, and William E. Rundstrum, Assistant County Counsel, for Defendants and Appellants.

Susan Minasian and Robert A. Glusman as Amici Curiae on behalf of Defendants and Appellants.

Lynn S. Carman, Tanya Broder, Ed Barnes and Melinda Bird for Plaintiffs and Respondents.

## OPINION

**KLINE, P. J.—**

### Introduction

The Alameda County Board of Supervisors (County) appeals a judgment of the superior court granting a peremptory writ of mandate in favor of respondents general assistance recipients[1] directing County to refrain from implementing any grant reductions for homeless general assistance recipients or those with shelter and utility costs less than $194 per month and to refrain from implementing County's proposed and existing vendor pay plan.

County contends that the enactment of Welfare and Institutions Code section 17000.5 allows the challenged policies and practices and that the court abused its discretion in granting the writ and enjoining implementation of County's program.

---

[1]Respondents are petitioners in three cases consolidated by the superior court: Bell v. Board of Supervisors, Beal v. Board of Supervisors, and Burks v. Knudson.

*Facts and Procedural Background*

"General assistance is a state-mandated program for the support of all poor or incapacitated county residents who lack other means of support." (*Poverty Resistance Center* v. *Hart* (1989) 213 Cal.App.3d 295, 298 [261 Cal.Rptr. 545].)

On July 23, 1991, responding to the adoption by the Legislature of Welfare and Institutions Code section 17000.5 (eff. June 30, 1991),[2] County adopted General Assistance Ordinance No. 0-91-42 (the Ordinance), changing County's general assistance plan in significant ways.

At the time the Ordinance was adopted, County's general assistance grant was $340 per month.[3] That grant amount was based upon the following standard of need allowances: shelter costs ($194) (including $151 rent and $43 utilities), food ($119), clothing ($9), transportation ($10) and personal incidentals ($8). Prior to adoption of the Ordinance, County paid all eligible recipients the full grant amount in cash. The Ordinance amends title 9 of the Ordinance Code of the County of Alameda Relating to General Assistance as follows: First, it amends sections 9-34.1 and 9-34.5 of title 9 to provide that County's standard of need allowances may be satisfied by vouchers or vendor payments, rather than by cash/warrant grants directly to recipients. Pursuant to these provisions the county social services agency (the Agency) proposes to provide cash payments of $19 per month to cover transportation and clothing needs. Food and personal incidentals in a maximum amount of $127 will be provided through vendor payments. Under the vendor pay plan, warrants or checks for food and incidentals will be payable to designated grocery stores and will be issued on a weekly basis. Rent and utilities will be paid through vendor payments to landlords. Recipients whose shelter costs exceed $194 will receive a smaller allocation for food, incidentals and transportation.

Second, pursuant to those provisions, the Agency proposes to limit payments for shelter to a recipient's actual costs. Thus, a recipient whose shelter costs are less than $194 per month will receive less than $340 per month.

Third, section 9-34.6 of the Ordinance provides that homeless recipients will not receive the shelter allocation of the grant and will thus receive

---

[2]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]After the judgment was entered, section 17000.5 was amended further, as were sections 11450 and 11453, resulting in a reduction of the Aid to Families with Dependent Children (AFDC) grant (and consequently of the general assistance "cap") to $326 and a suspension of the cost-of-living adjustment through June of 1996. Subsequent reductions in AFDC levels resulted in "capping" the general assistance level under section 17000.5 at approximately $308 in 1993.

$146 per month, rather than $340, to meet nonshelter needs. Ordinance section 9-34.7 provides that homeless recipients may receive up to three months of unused shelter allocation ($582) for rental security, cleaning deposits, and/or last month's rent if they are able to locate permanent housing. Any other unused portions of the grant will be permanently forfeited. This provision does not apply to recipients who live in housing which costs less than $194 per month.

In August 1991, the instant actions challenging the Ordinance were filed and later consolidated for all purposes. In Bell, petitioners sought a writ of mandate prohibiting County from implementing the grant reductions for homeless recipients and those with shelter costs below $194. In Beal, petitioners sought a writ of mandate prohibiting implementation of the vendor pay program. In Burks, petitioners and plaintiffs sought a preliminary injunction enjoining the grant reductions for the homeless and those with reduced shelter costs, and enjoining the vendor pay plan insofar as it provides only $19 per month for transportation and clothing.

On December 3, 1991, the superior court granted a peremptory writ of mandate, directed to County and its agents, commanding them "to refrain from implementing any grant reductions for General Assistance recipients who are homeless or whose shelter and utility costs are less than $194 per month pursuant to [the Ordinance]" and to "refrain from implementing the proposed and existing vendor pay plan pursuant to [the Ordinance]."[4, 5]

This timely appeal by County followed.

---

[4]The court also awarded petitioners attorney fees pursuant to Code of Civil Procedure section 1021.5 in an amount to be determined, plus costs.

[5]In a "Statement of Decision" issued in connection with the writ, the court explained its reasons for granting the writ:

"[County's] reduction of the General assistance grant for homeless recipients and for those whose shelter costs are less than $194 is inherently based on the premise that $146 per month is sufficient to meet non-shelter needs. However, [County's] allocations for food, clothing and transportation are not supported by any study. [The] Board of Supervisors had no evidence before it as to the actual cost of obtaining these subsistence needs at the time that it adopted the Ordinance. Plaintiffs in *Burks*, on the other hand, have presented undisputed evidence that [County's] allocations are inadequate to meet basic needs.

"[County's] grant reductions are without factual basis and are therefore arbitrary and capricious, in violation of Welfare & Institutions Code §§ 10000, 17000, and 17001. [Citing *Whitfield*, *Boehm I* and *Boehm II*, *infra*.]"

The court noted that the recently enacted section 17000.5 "does not protect [County's] proposal to provide a grant of $146 to the homeless or a similarly reduced grant to those with shelter costs less than $194."

As for the vendor pay plan, the court found the "allocations for food, clothing and transportation must be supported by a study showing their adequacy, and their vendor pay procedures must enable recipients to meet basic needs. [Citations.] The undisputed evidence shows that [County's] vendor pay plan locks in recipients to arbitrary and inadequate allocations which have no factual basis. The plan thereby conflicts with §§ 10000, 17000 and

## Discussion

Counties are charged by the state with the duty to relieve and support the indigent and disabled. (§§ 10000, 17000.) "Section 10000 states that the statutory purpose and legislative intent of the provisions governing general assistance are 'to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely . . . and that aid shall be so administered and services so provided, to the extent not in conflict with federal law, as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society.' Sections 10000, 17000, and 17001 are also to be construed with section 11000, which provides, ' "The provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program." ' [Citations.]" (*Whitfield* v. *Board of Supervisors* (1991) 227 Cal.App.3d 451, 457 [277 Cal.Rptr. 815].)

■ In discharging their duty to provide humane assistance, ". . . counties have broad discretion to set eligibility standards for, and conditions upon, their general assistance aid. (*Clay* v. *Tryk* (1986) 177 Cal.App.3d 119, 124 . . . .) However, ' " '[i]n administering general assistance relief the county acts as an agent of the state. [Citation.] When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. [Citation.]' " ' (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 211 . . . , quoting *Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 679 . . . .)" (*Oberlander* v. *County of Contra Costa* (1992) 11 Cal.App.4th 535, 538-539 [15 Cal.Rptr.2d 182].)

In *Whitfield* v. *Board of Supervisors, supra*, 227 Cal.App.3d 451, we discussed at length the statutory bases for the responsibilities imposed on counties adopting and administering their general assistance programs. A long line of authority has interpreted section 17000's mandate to "relieve and support its residents" to require the county to make a "factual determination of the minimum subsistence needs of its poor . . . ." (*Whitfield*,

17001." Again, the court noted that section 17000.5 did not save the vendor pay plan. "It only authorizes an overall grant equal to 62% of the poverty level. It does not, however, authorize arbitrary allocations such as those which are the basis of respondents' vendor pay plan. Similarly, the statute does not authorize a payment system which fails the test of *Mooney* and violates the holdings and reasoning of *Boehm I, Boehm II*, and *Whitfield*."

*supra*, at p. 457.) Hence, where the general assistance level is challenged as insufficient, the courts have required the county to justify the standard " 'by an identified factual predicate concerning the *actual* cost of subsistence within the county. [Citations.]' *(Poverty Resistance Center* v. *Hart* [(1991)] 213 Cal.App.3d [295,] at p. 304 (italics in original); *Boehm* [v. *County of Merced* (1985)] 163 Cal.App.3d [447,] at p. 452 . . . .)" *(Whitfield, supra,* at p. 457.)[6] Further, the courts have required that minimum subsistence must include allocations for housing, food, utilities, clothing, transportation, and medical care. (E.g., *ibid.*; *Boehm II, supra,* 178 Cal.App.3d 494, 499.)

In 1991, the Legislature enacted section 17000.5, which provides that counties may discharge their statutory obligations by adopting a standard of aid that is 62 percent of any guideline that is equal to the 1991 federal official poverty line and may annually adjust that guideline in an amount equal to any adjustment provided under the AFDC program. (§ 17000.5, subd. (b); see *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th 535, 539.) ■ In effect, the statute means that a county need no longer set a standard of aid that meets the actual basic needs of its indigent general assistance recipients, but may provide a lower level of benefits, provided that standard of aid meets the 62 percent requirement. "The adoption of a standard of aid pursuant to this section shall constitute a sufficient standard of aid." (§ 17000.5, subd. (b); *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th 535, 539.)

### A.

■ After the enactment of section 17000.5, any county meeting the 62 percent requirement by definition has set a sufficient standard of aid, and need not justify that standard by a study of actual subsistence needs. *(Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at p. 542.)[7]

County candidly admits this standard is less than that required to meet actual basic needs of general assistance recipients. Logically, if counties may satisfy their section 17000 responsibilities (capping their general assistance obligations) by providing less than required to meet basic needs, it follows

[6]The studies of actual subsistence needs are referred to as "*Boehm* studies" after *Boehm* v. *County of Merced* (1985) 163 Cal.App.3d 447 [209 Cal.Rptr. 530] *(Boehm I)* and *Boehm* v. *Superior Court* (1986) 178 Cal.App.3d 494 [223 Cal.Rptr. 716] *(Boehm II).*

[7]*Oberlander* phrased its conclusion in a somewhat different fashion, reasoning that ". . . any county which meets the 62 percent requirement *has by definition provided minimum subsistence needs . . . .*" (11 Cal.App.4th at p. 542, italics added.) We refrain from adopting this language, posited as it is upon a fiction. Rather, it seems clear to us the Legislature has determined that counties need not meet actual basic needs of the poor, so long as they relieve and support the poor at the level required by the statute.

that counties may set the component parts of general assistance at less than actual need without the support of *Boehm* studies, so long as the total general assistance level meets the criteria established in section 17000.5. To require County to show that each component of general assistance meets actual basic needs, as argued by respondents, where the Legislature has clearly determined that the sum need not meet basic needs, places County in the position of never being able to justify *all* components of its general assistance program as meeting basic needs under the *Boehm-Whitfield* line of cases, even though it has complied in full with section 17000.5.

It follows that under section 17000.5 County is not required to conduct a *Boehm* study to justify any part of its general assistance program where the standard is set according to the so-called "safe harbor" provided by section 17000.5. (*Oberlander, supra,* 11 Cal.App.4th at p. 544.)

*B.*

County's reduction of shelter benefits, however, stands on a different footing.

In *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th 535, Division Four of this court upheld that provision of a Contra Costa ordinance crediting a person living in a public or private shelter with income of $10 per day as an approximation of the value of such food and shelter. The court expressly noted that the regulations provided that no deduction would be made from the grant of an applicant willing to accept shelter unless shelter space was *actually available.* (*Id.,* at p. 545, fn. 8.)

*Oberlander* concluded the trial court had erred in requiring the county to conduct a *Boehm* study before using the value of in-kind food and shelter benefits provided to the homeless to meet the standard established by section 17000.5. In so holding, the *Oberlander* court relied upon the provision of section 17000.5 expressly permitting inclusion of in-kind benefits in setting the general assistance standard of aid. (11 Cal.App.4th at p. 546.)[8]

 County contends *Oberlander* supports its reduction of shelter benefits for those general assistance recipients who spend less than the $194

---

[8]Subdivision (a) as amended now reads: "The board of supervisors in any county may adopt a general assistance standard of aid, *including the value of in-kind aid,* that is 62 percent of a guideline that is equal to the 1991 federal official poverty line and may annually adjust that guideline in an amount equal to any adjustment provided under Chapter 2 (commencing with Section 11200) of Part 3 for establishing a maximum aid level in the county." (§ 17000.5, subd. (a), italics added.)

*Oberlander* also held that the plaintiffs' privacy claims were not ripe and that their claim that deducting the value of half a month's shelter residence would leave a general assistance

allocated to shelter and permits elimination of the shelter component for homeless persons who incur no shelter expense. In addition, County argues that the requirement that a general assistance recipient actually incur a shelter expense is simply an "eligibility requirement" for receipt of the shelter benefit component of the grant. While a county may condition shelter benefits on need, and accordingly may reduce the cash component of shelter assistance to the lesser cost to the recipient of shelter actually received or shown to be reasonably available, it cannot reduce or eliminate shelter benefits where adequate shelter is neither provided nor realistically available to recipients. Nothing in the provisions which permit counties to provide in-kind benefits in lieu of cash allows counties to reduce assistance below statutorily mandated minimums by including the value of illusory in-kind benefits in their assistance package. Because the Ordinance in question would allow that result, it goes beyond the boundaries of administrative discretion set down in *Mooney* v. *Pickett* (1971) 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231], and is therefore infirm.

As we have discussed, counties may adopt standards of eligibility for general assistance. The particular standards a county adopts are within its broad discretion so long as the regulations are "consistent, not in conflict with the [assistance] statute, and reasonably necessary to effectuate its purpose." (*Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 679; accord, *Whitfield* v. *Board of Supervisors, supra,* 227 Cal.App.3d 451, 457.) Accordingly, in such cases as *Whitfield, supra,* we have invalidated county assistance schemes that failed to carry out statutory mandates. (*Id.,* at p. 457.) ■ However, there is nothing in the Welfare and Institutions Code which requires a county to comply with its obligation to relieve the indigent only by cash payments, to be spent as the recipient pleases. To the contrary, the Legislature has specifically authorized counties to provide necessary aid directly. (§ 10052; see, e.g., *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th 535, 545-546 [in-kind provision of food and housing at county shelter].) Moreover, by enacting section 17000.5, the Legislature has made it clear that counties may satisfy their obligation to support by provision of in-kind aid, and may reduce general assistance grant levels by the value of such aid. It follows that so long as county assistance eligibility regulations do not defeat the purpose of the statutory scheme by depriving qualified recipients of mandated support, those regulations are within the broad discretion discussed in *Mooney* v. *Pickett, supra,* 4 Cal.3d at pages 678-679. ■ To that extent, we agree with County that it may reduce or eliminate those cash shelter benefits where it can be established that the recipients are actually receiving the shelter required by statute at a cost less than the shelter allocation.

recipient with insufficient funds to live on for the rest of the month had no factual support in the record. (11 Cal.App.4th at p. 546, fn. 9.)

■ Second, there is no infirmity in principle underlying County's vendor-pay ordinance as applied to shelter benefits. As discussed in *Oberlander, supra,* counties have been statutorily authorized to reduce general assistance grants by the value of in-kind benefits they provide in lieu of cash. (See *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th at p. 545 and fn. 7 [approving reduction of cash grant to $42 based on value of food and housing provided at county homeless center].) Thus, where County provides shelter by means of payments directly to vendors rather than by cash payments to recipients, it may reduce its cash grant by the value of the housing provided.

■ However, though we approve County's Ordinance to the extent discussed above, neither the in-kind benefit principles explained in *Oberlander* nor County's broad discretion to set eligibility standards can support the Ordinance to the extent it permits County to reduce the shelter benefit by the value of benefits *not received* and *not available.* County may value in-kind benefits *actually provided* or realistically *available* to recipients and may reduce its shelter component accordingly. However, County may not reduce its general assistance grant to a willing recipient by the value of benefits not received and not shown to be available. Section 17000.5 allows a county to include the value of in-kind aid when it considers whether it has met the minimum level of aid required by that statute, but there is nothing in section 17000.5 or any other part of the statutory scheme which allows a county to reduce aid below that minimum by considering the value of in-kind aid that a recipient does not receive and cannot obtain. In such circumstances, County's plan stretches section 17000.5 beyond its terms and constitutes an abuse of discretion. Accordingly, we shall modify the judgment to limit its scope to the area we find impermissible.

Though we find County's intended reductions to general assistance shelter aid infirm, we leave the manner in which County is to avoid such improper reductions to its discretion. We have neither the empirical data nor the administrative expertise necessary to proffer a comprehensive recommendation as to how County should administer the shelter component of its general assistance program to meet its statutory obligations. We have set forth the guiding principles. It is County's responsibility to fairly and equitably apply those principles in the management of its program.

## C.

It is well established that County is not required to provide its general assistance as a flat cash grant. Cases considering the issue have long

approved provision of in-kind aid as part of a county's general assistance program. (See *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 210 [211 Cal.Rptr. 398, 695 P.2d 695]; *Oberlander* v. *County of Contra Costa, supra,* 11 Cal.App.4th 535, 546; *Scates* v. *Rydingsword* (1991) 229 Cal.App.3d 1085, 1098 [280 Cal.Rptr. 544]; *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217].) Relying upon the California Supreme Court opinion *Cooper* v. *Swoap* (1974) 11 Cal.3d 856 [115 Cal.Rptr. 1, 524 P.2d 97], respondents contend that courts have approved in-kind benefits only where counties were required to meet *actual* subsistence needs and that after adoption of section 17000.5 there is no longer any such requirement. ▪ According to respondents, in-kind aid may be counted toward the whole grant only where the sums remaining after calculating the value of in-kind assistance are sufficient to meet all minimum subsistence needs left after utilization of the in-kind benefits. Section 17000.5 conflicts with this contention, in our view, because it expressly allows a county to value in-kind benefits in setting its standard of aid at the 62 percent "safe harbor" level.

In *Cooper* v. *Swoap, supra,* 11 Cal.3d 856, the court held invalid an administrative regulation treating "noncash economic benefits" enjoyed by certain AFDC recipients as "income" to those recipients warranting a reduction of their grants. (*Id.,* at p. 859.)

The Supreme Court invalidated the rigid allocation scheme administratively imposed in *Cooper* because the AFDC program was a flat grant payment system. Respondents' reliance on *Cooper* is misplaced, because unlike AFDC, the general assistance scheme contemplates the use of in-kind benefits and prescribes a level of aid that need not satisfy actual needs. The fact that the general assistance formula is tied to AFDC benefit levels does not sub silentio convert general assistance into a flat grant system.

### D.

The trial court enjoined County from implementing the vendor pay plan portion of its general assistance program.[9] Under that plan, County proposed to supply food and personal incidentals in a maximum amount of $127 through vendor payments, issuing checks payable to designated grocery stores on a weekly basis and paying rent and utilities through direct payments to landlords. The lower court found the plan deficient in that County's allocations for food, clothing, and transportation were unsupported by a

---

[9]The writ in this case was issued on December 12, 1991, prior to the amendment of section 17000.5 to expressly countenance inclusion of the value of in-kind benefits in the standard of aid on September 15, 1992, and prior to issuance of the *Oberlander* opinion.

study showing their adequacy to enable recipients to meet basic needs, and that the vendor pay plan conflicted with sections 10000, 17000, and 17001 by "lock[ing] in recipients to arbitrary and inadequate allocations which have no factual basis." The lower court noted that section 17000.5 did not save the vendor pay plan, as it "only authorizes an overall grant equal to 62% of the poverty level. It does not, however, authorize arbitrary allocations such as those which are the basis of respondents' vendor pay plan."

■ We are compelled to conclude that both the allocation and "lock-in" features of the vendor pay plan are within County's discretion. As earlier explained, factual studies of actual minimum subsistence needs are not required to support allocations between categories of need where the total general assistance level meets the standard set by section 17000.5. To hold that County cannot allocate among categories of need and cannot provide benefits in those categories through a mechanism such as vendor pay or vouchers unless the County meets actual basic needs would essentially mandate a flat cash grant program where the County chooses to establish its standard of aid pursuant to the formula prescribed in section 17000.5, which specifically contemplates that counties may satisfy their section 17000 obligations by providing in-kind aid. As we noted in *Scates* v. *Rydingsword*, *supra*, 229 Cal.App.3d 1085, the Supreme Court in *Robbins* v. *Superior Court*, *supra*, 38 Cal.3d 199, approved in concept the provision of in-kind benefits despite its acknowledgement that "in-kind programs may be subject to criticism that services like homeless shelters and soup centers, for example, do not demonstrably benefit enough indigents or relieve conditions county-wide to count as section 17000 aid. . . . Whatever the pitfalls of providing that kind of aid," we concluded, ". . . a county does have the option." (*Scates* v. *Rydingsword*, *supra*, at p. 1098, citations omitted.)

The "lock-in" feature of the vendor pay plan accompanies all benefits that are "in-kind" rather than in cash. To invalidate the vendor pay plan here as unduly rigid would effectively mandate a flat cash grant system or, in the alternative, require County to provide individualized "in kind" benefits according to the preference of each recipient—an unworkable scheme. In either case we would be giving lip service to the idea of "in kind" assistance, while entirely undercutting a county's ability to provide such benefits.

■ Respondents appear to argue that, even if the use of in-kind aid is specifically authorized by section 17000.5, benefits cannot be provided in this form unless the board of supervisors has relied on evidence showing that this alternative to a cash grant system is justified. This argument cannot succeed. It is difficult to imagine a board of supervisors would utilize in-kind benefits, which necessitate administrative costs that would not be

incurred in a cash grant system, absent evidence such costs were more than offset by savings, as shown here, by evidence before the board of supervisors. The cases respondents rely on—such as *Poverty Resistance Center* v. *Hart, supra*, 213 Cal.App.3d 295—relate to the adequacy not the form of assistance, and are therefore inapposite. In this case, County is not endeavoring to escape any statutory duty on the basis of poverty.

 This does not mean, however, that all in-kind benefits are necessarily valid. Although the Legislature has relieved it of the duty to meet the real minimum subsistence needs of its indigent population, and has specifically authorized the use of in-kind aid, County must still act within the boundaries of section 17000.5; that is, its allocation among categories of need and its method of providing in kind assistance may not be arbitrary or capricious. For example, County could not reasonably allocate aid among categories in a way grossly disproportionate to the relative costs and importance of the categories to the indigent population as a whole. That part of County's program which allows it to pay landlords directly up to the entire benefit of $340 for shelter costs, reducing the remaining benefit accordingly and leaving recipients with little or nothing to cover food, transportation, and clothing for the month, may be such a disproportionate allocation. However, respondents do not challenge that allocation as disproportionate and we need not decide the issue.

 "A regulation, like a statute, is presumed valid and a challenger bears the burden of pleading and proof of invalidity. [Citations.]" (*Poverty Resistance Center* v. *Hart, supra*, 213 Cal.App.3d at p. 311.) Respondents have failed to show that the allocation among shelter and utilities, food, clothing and transportation is demonstrably disproportionate to the relative needs of the indigent population.

 We agree County may not provide in-kind aid in such a way as to render the benefit illusory. In-kind assistance would prove illusory if it did not actually confer the purported benefit or if the burden of using the benefit was unreasonably onerous. Respondents have not, however, established that the vendor pay plan is in any way illusory.

 Respondents Bell and Beal contend the vendor pay plan violates their constitutional right to due process, as it forces them to give up their "fundamental right to manage their own affairs" as a condition of receiving welfare in violation of both the Fourteenth Amendment and article I, section 1 of the California Constitution. We cannot agree.

In *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252, [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118] upon which

respondents Bell and Beal rely, the California Supreme Court held the Legislature could not restrict funding for abortions for Medi-Cal recipients. In so holding, the court relied upon the privacy provision of the California Constitution. The court found a fundamental right of privacy or liberty in matters related to procreative choice. " 'The fundamental right of the woman to choose whether to bear children follows from the Supreme Court's and this court's repeated acknowledgment of a "right of privacy" or "liberty" in matters related to marriage, family and sex.' [Citation.]" (*Id.*, at p. 275.) We do not see how the rights described in *Myers*, may be transmuted into a general "fundamental right" to receive general assistance benefits in cash.

Indeed, the provision of in-kind benefits necessarily limits choice. As recognized in *Robbins* v. *Superior Court, supra*, 38 Cal.3d 199; "[t]he various forms of 'in-kind' benefits differ substantially in their impact on an individual recipient's freedom." (*Id.*, at p. 210, fn. omitted.) The court explained that "only those 'in-kind' benefits that result in the loss of privacy and choice that placement at a County institution for the poor entails" were at issue in *Robbins*. It found such residency restriction to be "a far more pervasive restriction on the recipient's freedom of choice than the restriction found in other types of 'in-kind' aid, for example food stamps." (*Id.*, at p. 210.)

Like food stamps, the vendor payments at issue here do not unconstitutionally burden the privacy rights of recipients. The portions of the vendor pay plan requiring rent payments to be made directly to landlords or providing for vendor payments at several supermarket chains do not restrict choice so severely as to create a constitutional problem.

 Nor does the provision of such in-kind aid violate the mandate of section 10501, as argued by respondents Bell and Beal. Section 10501 provides: "No person concerned with the administration of a public assistance program shall dictate how any recipient shall expend the aid granted to him." To interpret section 10501 to prohibit in-kind aid programs would contradict the very definition of "aid" set forth in section 10052, which refers specifically to "vendor payments" as well as to direct money payments.[10] (See *Rogers* v. *Detrich* (1976) 58 Cal.App.3d 90 [128 Cal.Rptr. 261].) Such interpretation would also flatly contradict the clear authorization of in-kind aid in section 17000.5.

The prohibition of section 10501 cannot mean that County is prohibited from allocating its benefits among categories of need and providing in-kind benefits within those categories.

---

[10]" 'Aid' means financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments and vendor payments." (§ 10052.)

## Disposition

That part of the judgment directing issue of a writ of mandate commanding County to refrain from implementing any grant reductions for general assistance recipients who are homeless or whose shelter and utility costs are less than $194 per month is modified to direct issue of a writ of mandate commanding County to refrain from implementing any such grant reductions where in-kind shelter benefits are neither provided to such recipients nor realistically available to them. As modified, that part of the judgment is affirmed. The portion of the judgment awarding attorney fees in an amount to be determined is affirmed, with directions to consider the parties' relative success in this appeal as well as in the trial court. The remainder of the judgment is reversed. The trial court is directed to vacate its writ of mandate and to issue a new writ in conformity with this opinion. Respondents shall be allowed their costs on appeal.

Benson, J., and Phelan, J., concurred.

A petition for a rehearing was denied May 2, 1994.